[Crim. No. 5734.   Second Dist., Div. Three.   Mar. 26, 1957.]

THE PEOPLE, Respondent, v. DARREL ELDEN HAILEY et al., Defendants; LOUIS A. BELME, Appellant.

Burch Donahue for Appellant.

Edmund G. Brown, Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant Belme, one Hailey, one McCarty and one Gildersleeve were charged by information with robbery. Trial by jury was waived. Hailey pleaded guilty. The case was dismissed as to Gildersleeve. McCarty and Belme were adjudged guilty. Belme appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the evidence was insufficient to support the judgment.

The robbery occurred on December 21, 1955, about 3:10 p. m. Mr. Wilmot, a cashier at the Western Union Telegraph Company, 734 South Flower Street, Los Angeles, was returning to his office after having been to a bank where he obtained $7,500 in currency for use in paying the employees. He was carrying the money in a bag. He entered an elevator in the Western Union building, and as he turned to face the elevator door defendant Hailey "dashed around the corner," grabbed the bag and tried to take it away from him. Defendant McCarty stood in the doorway of the elevator with a revolver in his hand. In the struggle for possession of the bag, Hailey pulled Mr. Wilmot out of the elevator and struck him on the hand with a revolver. As the revolver "came down" it was discharged and the bullet went through Mr. Wilmot's trouser leg. Hailey jerked the bag from Mr. Wilmot's hand. Then Hailey and McCarty ran down the hallway (a distance of approximately 150 feet) and out the front door. Mr. Wilmot identified Hailey as one of the robbers. The elevator operator identified Hailey and McCarty as the robbers who were in the building.

Miss Schneider testified that on said December 21, about 3:15 p. m., while she was at the front door of said building she heard a gunshot; then she saw two men run out of the building and one of them had a satchel in his hand and was putting a gun in his belt; the man with the satchel and

gun was defendant Hailey; she saw the two men run out the front door, get into a 1947 or 1948 light blue automobile and take off; after they were in the automobile it stayed there just long enough for someone to start it; she did not notice whether someone else was in the automobile.

Mr. Novoa testified that at said time he was in a parked automobile in front of the Western Union office; about 30 feet in front of his automobile, and in front of the entrance of the building, there was a "parked" dark blue automobile that "was in motion back and forth" about 10 minutes; he saw one person in that automobile—the driver, a white person whose hair style was on the "bushy side"; the automobile "took off"; about 5 or 10 minutes after he saw the automobile he heard that there had been a robbery.

Mr. Williams, a taxicab driver, testified that on said December 21, about 5 p. m., two men entered his cab as passengers at Pico Boulevard and Vermont Avenue, and he took them to Grand Avenue and Pico Boulevard; at that place one of the men got out of the cab and went to the rear of the cab, and the other man stayed in the cab; the man who had gone to the rear returned to the cab; then the cab went to 97th and Prairie Streets in Inglewood, and when the cab stopped there a blue Dodge automobile pulled up behind the cab; another man was in that automobile; the two men who were in the cab paid the cab fare and got into the other automobile. Photographs of Hailey and McCarty were shown to the witness, Mr. Williams. He testified further that, to the best of his judgment, those photographs were photographs of the two men who were in the cab.

Officer Rafferty testified that he had a conversation with defendant Belme (appellant) on January 3, 1956, wherein Belme said that on the morning of December 21 Hailey came to Belme's house and asked if he could borrow Belme's car; Belme replied that he could borrow it; Hailey took the car, which was a 1942 blue Dodge sedan; he returned the car to Belme that afternoon about 4 or 5 o'clock at the Swing Time Bar in Inglewood; he (Hailey) came into the bar with another fellow and gave the car keys and $200 to Belme, and told him the car was parked in the back. The officer testified further that he asked Belme what the $200 was for, and he replied that it was for the use of the car; the officer asked him if he knew, before the car was taken, what Hailey was going to use it for; Belme replied that he knew it was going to be for something illegal but he did not know exactly

what it was; the officer asked if he had any conversation with Hailey when the car was returned; Belme replied that Hailey mentioned the name "Western Union," and said everything went all right, that Belme did not have to worry, that Hailey had a scuffle with the guy in an elevator, and a shot was fired but no one was hurt.

Officer Rafferty testified further that he had another conversation with Belme on the day before the preliminary examination, in the hallway of the Hall of Justice, and in the presence of Belme's attorney, Mr. Donahue; at that conversation the officer said: "Louis [referring to Belme], you lied to us . . . . We know that you not only received a thousand dollars, we know that you received an additional $500.00. We know that you drove the car. That they got out, that they took a taxicab and met you at Frank Wiggins Trade School [Pico and Grand] and you later followed the cab out to Inglewood." The officer testified that Belme "looked at me and said nothing."

Belme testified that he did not participate in a robbery at the Western Union; on the morning of December 21, 1955, about 10 a. m., Hailey came to Belme's house and asked if he could use Belme's car; Belme said "Yes"; then Hailey, accompanied by Belme, drove the car to the Swing Time Café and left Belme there; Belme stayed there about 15 minutes and then went home; then he went to James Pollack's house in Torrance where Belme was going to build a chimney (Pollack was manager of the Swing Time Café); Belme stayed there about an hour fixing the foundation for the chimney; then he and Pollack went to a place on Hobart Street (distance about 12 miles) where Mr. Greminger was working and obtained some cement; they stayed there a few minutes, and Mr. Greminger went with them to Pollack's place, arriving there about 2:30 p. m.; the three of them worked on the chimney until approximately 4 p. m. when Pollack took Belme home; Belme went to the Swing Time Café where he waited for the return of his car; Hailey returned there with the car about 5 p. m. and gave Belme $200 and said that it was for the use of the car; Belme asked Hailey what they had done, and he replied that "they pulled a job down in L. A.," and he had "to take off some place" and would see Belme later; then Hailey left; Belme did not know that there was to be a robbery; the first knowledge he had that something was wrong was when Hailey told him at the café that they did something wrong; he did not tell

Officer Rafferty that he knew "they" were going to use the car for an illegal purpose; Officer Rafferty did not say to him: "You shouldn't lie Louis. You know you received $500 more at or about the Frank Wiggins School"; the officer did not say anything like that to him.

James Pollack testified that on December 21, 1955, he first saw Belme about 11 a. m. at Pollack's house; he and Belme went to a place on Hobart Street where Mr. Greminger was working, obtained some cement, returned home, and mixed and poured the cement; Mr. Greminger did the cement finishing; Belme stayed there until approximately 4:15 p. m., when Pollack took Belme home, arriving there about 4:40 p. m.

Mr. Greminger testified that on said December 21, about 1:30 p. m., he saw Belme and Pollack at a construction job on Hobart Street, and at that time nine sacks of cement were put on Greminger's truck; then Greminger drove the truck to Pollack's house, and Belme rode in the truck with him; the three men mixed and poured the cement at Pollack's house, and Greminger did the cement finishing; Greminger left the place about 3:45 p. m. and at that time Belme was at Pollack's house.

Mr. Donahue, counsel for Belme, testified that on January 17, 1956, the day before the preliminary examination, he and Officer Rafferty had a conversation in the Hall of Justice; at that time the officer said that Belme was lying to the witness (Mr. Donahue), that the officers knew that Belme was the driver of the car, that Belme drove to the Frank Wiggins School, and that Belme received $500 additional. Mr. Donahue testified further that the conversation was in the presence of himself and the officer, and at that time Belme and Belme's wife were at the far end of the hall.

Defendant Hailey, called as a witness (on rebuttal) by the People, testified in part that he gave some of the money to Belme; that he did not remember exactly how much he gave Belme, but it was "a little bit more or less" than $500.

There was evidence from which it could be found that a person other than Hailey or McCarty was the driver of the automobile which took Hailey and McCarty from the scene of the robbery. Mr. Novoa, who was in front of the Western Union building at the time of the robbery, saw a person in the driver's seat of a dark blue automobile which was in front of that building at the time of the robbery. Mr. Williams, the taxicab driver, saw a blue Dodge automobile pull up behind his cab when he stopped in Inglewood, and

he saw a man in that automobile, and he saw the two passengers who were in the cab (Hailey and McCarty) get into the other automobile. It cannot be said, however, that the evidence was sufficient to justify a finding that appellant was the driver of the automobile.

There was evidence to the effect that appellant made no reply when Officer Rafferty told him that the officers knew that he drove the car. Respondent contends in effect that that accusatory statement and appellant's conduct with reference thereto may be considered as evidence indicating an admission that he was the driver. ██ ''[W]hen a defendant, under conditions which fairly afford him an opportunity to reply, stands mute in the face of an accusation of crime, the circumstance of his silence may be taken against him as evidence indicating an admission of guilt.'' (*People* v. *Bisbines*, 132 Cal.App. 239, 241-242 [22 P.2d 762].) ██ In the present case there was a conflict in the evidence as to whether appellant was present with Officer Rafferty and Mr. Donahue, appellant's attorney, when Officer Rafferty said that the officers knew that appellant drove the car. Officer Rafferty testified that appellant and his attorney were present. Mr. Donahue testified that appellant was not present, but was at the other end of the hall. Even if it be assumed that appellant was present when Officer Rafferty made said statement, the statement was not made under conditions which required appellant to reply, or under conditions which fairly afforded appellant an opportunity to reply. Appellant's attorney was present and appellant would have been justified in assuming that his attorney would make any statement that was called for under the circumstances. The attorney was not required to instruct his client to reply to the officer, nor was the attorney required to make a reply. The relationship of attorney and client, of course, existed between the attorney and appellant. Under the circumstances here the appellant, with proper regard for that relationship and for the fact that by reason of the relationship the attorney was his spokesman, was not required to reply. Likewise, the attorney, with proper regard for the confidential relationship existing between him and his client, was not required to reply. The failure of the appellant, or his attorney, to reply to the officer was not evidence indicating an admission that appellant did drive the car or was guilty of the offense charged.

Section 31 of the Penal Code defines principals in the commission of a crime as ''persons concerned in the commission

of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . ."

■ There was evidence that appellant knew, before he lent his automobile to Hailey, that the automobile would be used for an illegal purpose. Officer Rafferty testified that appellant made such a statement to him. Hailey took the automobile, pursuant to such permission, about 10 o'clock in the morning of December 21. About 5 o'clock in the afternoon of that day Hailey returned the automobile and gave appellant $200 for the use of it. Hailey testified that he gave appellant "a little bit more or less" than $500. Of course, the amount received for the use of the automobile for the seven hours ($200 or $500) was wholly disproportionate to the reasonable rental value of an automobile for ordinary use for a legitimate purpose. Appellant testified that when he received the $200 he asked Hailey what "they" had done, and Hailey replied that "they pulled a job down in L. A." and that he had "to take off some place" and would see appellant later. Officer Rafferty testified that, in a conversation with appellant as to what Hailey said when he returned the automobile, appellant said that Hailey mentioned the Western Union, and that Hailey said that everything went all right, appellant did not have to worry, Hailey had a scuffle with the guy in the elevator, and a shot was fired but no one was hurt. It could reasonably be inferred from the evidence that appellant lent his automobile to Hailey knowing that the automobile would be used for an illegal purpose, and that he knowingly received a share of the stolen money for the use of the automobile. It could reasonably be inferred from the evidence that appellant, with guilty knowledge and intent, united in a joint undertaking with Hailey and aided and abetted in the commission of the robbery. The evidence was sufficient to support the verdict.

The judgment, and the order denying the motion for a new trial, are affirmed.

Vallée, J., concurred.

Shinn, P. J., concurred in the judgment.

A petition for a rehearing was denied April 24, 1957, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1957.