[Crim. No. 6579.   In Bank.   May 4, 1960.]

THE PEOPLE, Respondent, v. MARY ANN BEVINS,
Appellant.

M. Lyle Nelson, under appointment by the Supreme Court, and Jacobs, Jacobs, Hayden & Nelson for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

WHITE, J.—This is an appeal by Mary Ann Bevins from a judgment of conviction for violation of Penal Code, section 4574.

In an information containing three counts, filed by the District Attorney of Orange County, defendant was accused in count I of the crime of attempting to bring a firearm into a jail (Pen. Code, § 4574) ; count II charged the offense of assisting a prisoner to escape (Pen. Code, § 4534), and in count III defendant was accused of attempting to bring into a jail a thing useful in aiding a prisoner to escape with intent to facilitate such escape (Pen. Code, § 4535). Following the entry of pleas of not guilty to all counts trial was had before a jury which returned verdicts finding defendant guilty on all three counts. Her motion for a new trial on counts II and III was granted and these counts were dismissed on motion of the district attorney. Defendant's application for probation on count I was denied and she was sentenced to state prison.

Concerning the factual background surrounding this prosecution the record reveals that the husband of defendant was confined in the Orange County jail. There was testimony that on February 8, 1958, defendant wrapped a pistol and six bullets in a pair of her husband's shorts, put them inside of an empty liquor box, then wrapped the entire package in paper. That in an effort to get the aforesaid package to her jailed husband, defendant intrusted it to a jail trusty along

with a small sum of money, presumably as his payment for delivery. The trusty, Thomas V. Warren, testified that on the aforesaid date, defendant gave the above described package and money to him for the aforementioned purpose. He testified that he did not know the contents of the package until after receipt thereof when he took it to his cell and opened it. That on the advice of, and together with another trusty, one Frank Davis, Warren hid the gun outside the jail under a trash dock. Cross-examination established that Warren had told a somewhat different version of the occurrence at the preliminary hearing, when he stated that he had neither taken the gun into the jail nor showed it to Mr. Davis.

The witness Davis corroborated Warren's testimony insofar as the former participated in the transaction. He further testified to a conversation had with the defendant at the request of the sheriff's office. On February 23, 1958, several weeks after she allegedly left the gun with Mr. Warren, and several days after it had been discovered by the authorities, defendant returned to the jail and was accosted by Mr. Davis. He stated that he asked defendant whether she was the one who gave the package to Mr. Warren, and she answered that she was. He told her that it was "still here" and inquired as to what she wanted done with it. She answered, he testified, that she wanted to get it in to "him." (Presumably her husband.) A discussion of money followed and the conversation terminated. A short time thereafter defendant was arrested.

The prosecution introduced a confession that defendant had made which was substantially similar in content to the aforesaid testimony of Warren and Davis. The voluntary character of this confession was testified to by several members of the district attorney's office who admitted, however, that defendant had been questioned by five investigators for three and a half hours before the confession was obtained.

Sworn as a witness in her own behalf defendant testified that she had never seen the witness Warren at any time prior to her arrest. She further testified that on the day of her arrest, the witness Davis had inquired of her as to whether she wanted him to take a gun to her husband for $50 but she declined, stating that her husband was already in enough trouble.

With regard to her confession, defendant testified that she made it as the result of interminable questioning by the officers who continued telling her "what she did," for so long a time that "in order to be left alone," and to absolve several

friends and relatives who were with her at the time of her arrest, and whom she feared were being detained, she repeated to the officers the story the latter had constantly narrated to her.

As a witness on behalf of the defendant, Lester Rich, an inmate of the jail, testified that on February 5, several days before defendant is alleged to have brought the gun to the jail, Warren offered to sell him a gun for $50. He further stated that on February 20, several days before the arrest of the defendant, he had seen Warren brought to a solitary confinement cell by two officers, handled roughly, and threatened with the penitentiary.[1]

While defendant was represented by counsel throughout the proceedings in the trial court, the effectiveness of such representation may well be regarded as questionable. Prior to the commencement of the trial, counsel had requested the court to relieve him. His request was denied. On numerous occasions during the proceedings in the trial court, counsel failed to appear, and on one occasion a bench warrant was issued to compel his attendance. Following her conviction, defendant filed her notice of appeal in propria persona and thereafter her present counsel was appointed by the District Court of Appeal to represent her.

The primary reason urged on this appeal for a reversal of the judgment is the failure of the trial court to give certain instructions notwithstanding the failure of defendant's counsel to request them. In this regard it is first urged that the trial court committed prejudicial error in failing, on its own motion, to instruct the jury as to who are accomplices to a crime (Pen. Code, § 1111), and that if under the evidence they determined that the witness Warren was an accomplice, that a conviction could not be had upon his testimony unless it was corroborated by such other evidence as would tend to connect the defendant with the commission of the offense, and that the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. We are persuaded that the evidence in the case now engaging our attention would support a finding that the prosecution witness Warren was an accomplice to the crime charged against de-

---

[1]Rich's testimony regarding the officers treatment of Warren would tend to show that Warren was being intimidated into implicating defendant in the crime of bringing the gun, which that day had been discovered, into the jail in order to escape prosecution himself.

fendant and for which she was found guilty. In this regard reference is made to the testimony of Rich that Warren offered to sell the former a gun several days prior to the time that defendant is alleged to have brought the gun to the jail, which could reasonably support a finding of Warren's knowledge of and, therefore, involvement in the crime. The question of Warren's being an accomplice was brought to the attention of the court during the trial.[2]

The applicable rule as to the duty of the court to give, on its own motion, instructions in criminal cases on the general principles of law pertinent to the case on trial is thus stated in *People* v. *Warren,* 16 Cal.2d 103, 118 [104 P.2d 1024], to arise: ". . . whenever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice. . . ." (See also *People* v. *Buffum,* 40 Cal.2d 709, 724 [256 P.2d 317].)

Applying the rule just stated to the evidentiary features of the case with which we are here concerned, it must be held that the failure of the court on its own motion to give an instruction on the law of accomplices insofar as the testimony of the witness Warren is concerned was error.

As her next ground for reversal, defendant urges that the court also erred in failing to instruct the jury as to the latter's duty to weigh the facts and circumstances surrounding defendant's confession as to whether it was freely and voluntarily given, and that it was the duty of the jury to wholly disregard it if they found it was the result of coercion as testified by defendant. When, as in the case at bar, there is evidence that the confession was free and voluntary, it is within the court's discretion to permit it to be read to the jury and to submit to the jury for its determination the question whether under all the surrounding circumstances the confession was made freely and voluntarily. (*People* v. *Oliveria,* 127 Cal. 376, 381 [59 P. 772]; *People* v. *Zarate,* 54 Cal. App. 372, 376-377 [201 P. 955].) The defendant was entitled to have the jury instructed appropriately on the subject. (*People* v. *Gonzales,* 24 Cal.2d 870, 877 [151 P.2d 251]; *People* v. *Bigelow,* 104 Cal.App.2d 380, 389-390 [231 P.2d 881].)

---

[2]Defendant's counsel had objected to a portion of Warren's testimony in the following manner: "Objection to that as hearsay . . . and it is going to be highly prejudicial to allow them to establish corroboration *through an accomplice here.* That is a question that has to be determined by the court." (Emphasis added.)

In an analogous situation present in the case of *People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116], we had occasion to discuss the problem of when the court was under a duty to give instructions on its own motion. In that case we said: "[T]he rule is usually stated to be that the court has a duty to give instructions on the general principles of law governing the case, even though not requested by the parties, but it need not instruct on specific points developed at the trial unless requested. . . .

The most rational interpretation of the phrase 'general principles of law governing the case' would seem to be as those principles of law commonly or closely and openly connected with the facts of the case before the court." It would be difficult to envision a more common problem in a criminal case than the use of evidence of a confession by the defendant.

In the case at bar the testimony as to the circumstances surrounding the manner in which defendant's confession was obtained was in direct conflict, thus directing to the attention of the trial judge that, under familiar rules, while it was within his discretion to permit the confession to be read to the jury, he was also required to submit to the jury for its determination under proper instructions the question whether under all the circumstances the confession was made freely and voluntarily. (*People* v. *Gonzales, supra,* 24 Cal.2d 870, 876.)

We must now inquire into the effect of the errors of the trial court in the light of the provisions of section 4½, article VI of the state Constitution. In the case of *People* v. *Watson* (1956), 46 Cal.2d 818, 834-837 [299 P.2d 243], this court exhaustively considered the historical background surrounding the constitutional provision, and reviewed the many cases in which its application was construed. In the case just cited we said at page 835: "The controlling consideration in applying the section is whether the error has resulted in a 'miscarriage of justice.' In determining the meaning of this phrase, the reviewing courts have stated the test to be applied in varying language. Emphasis in the main, however, has been placed on the constitutional requirements of a fair trial and due process, which emphasis is found in decisions resulting in reversals [citing cases]." The court then goes on to say that "Giving due consideration to the varying language heretofore employed in relating the constitutional amendment to the particular situations involved, it appears that the test gen-

erally applicable may be stated as follows: That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. Phrasing the test in this language avoids any complexity which may be said to result from the language employed in the double negative approach, and such phrasing seems to coincide with the affirmative language used in the constitutional provision. We are of the view, however, that the test as above stated does not constitute a departure from the tests heretofore applied, but is merely a crystallization in affirmative form of the guiding principle which the courts have sought to enunciate in phrasing the test in other language.''

■■■ Applying the test as above stated to the record before us, we are of the opinion that it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the errors committed by the trial court in failing to give an instruction on the law of accomplices with regard to Warren's testimony, and not referring to the jury for determination the question of whether under all the circumstances the defendant's confession was made freely and voluntarily. In the instant case the evidence is in sharp conflict. All the material facts testified to by the witnesses for the prosecution were denied and controverted by the defendant and her witnesses. Aside from the testimony of Warren, the only evidence against the defendant was that of Davis who was admittedly not present when the defendant was alleged to have brought the weapon to the jail. Furthermore, the jury was not required to believe him when confronted with the testimony of Lester Rich that several days before defendant is alleged to have brought the gun to the jail, Warren offered to sell him a gun for $50 and that several days before the arrest of the defendant the witness saw Warren brought to a solitary confinement cell by two officers, handled roughly and threatened with the penitentiary.

In this state of the evidence we are persuaded that the errors complained of may well have turned the scale in favor of the prosecution.

■■■ Defendant further urges that the evidence was insufficient to establish a violation of section 4574 of the Penal Code. She asserts that that statute only purports to punish

one who *brings* a firearm into a jail[3] whereas the evidence demonstrates that Mr. Warren was the one who took the gun into the jail. Such a limited construction of the statute is untenable. It is patent that that section of the Penal Code is violated when one sends or causes to be sent a proscribed article into a jail. (See *People* v. *Waid,* 127 Cal.App.2d 614, 617-618 [274 P.2d 217].) ▮ Defendant claims that such a construction of section 4574 makes superfluous section 4535 of the same code which specifically punishes bringing *or sending* into a jail a thing useful in aiding a prisoner to escape with intent to facilitate such escape. It is apparent, however, that section 4535 is different from section 4574 in that the former punishes the sending of a large number of items into a prison whereas section 4574 proscribes only deadly weapons. Concomitantly, section 4535 contains a requirement of specific intent which is lacking in section 4574 for the obvious reason that the latter section deals with firearms, concerning which an unlawful intent may be presumed. Thus, both sections may be reasonably held to proscribe sending as well as bringing into a jail certain objects without either section being thereby rendered superfluous.

We have considered other assignments of error made by defendant and have concluded they are without merit.

The judgment is reversed and the cause remanded for a new trial.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J. pro tem.,* concurred.

---

[3]At the time of defendant's conviction, the statute read as follows: "Any person who brings into any . . . jail . . . any firearms . . . is guilty of a felony. . . ." Since that time it has been amended to specifically proscribe "any person, who knowingly brings *or sends into* . . . any jail . . . is guilty of a felony. . . ." (Emphasis added.)

*Assigned by Chairman of Judicial Council.