[Crim. No. 12523.   Second Dist., Div. One.   June 6, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. OTIS L. SHELTON, Defendant and Appellant.

Richard Allan Weiss, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged in count I of an information with armed robbery (Pen. Code, § 211) and in count II with grand theft (Pen. Code, § 487, subd. (3)). The jury returned a verdict of guilt on the armed robbery charge and of acquittal on count II. Defendant moved to reduce the offense to second degree robbery; the motion was denied. He appeals from the judgment.

In the evening of January 27, 1966, defendant was sitting in a bar a few stools away from Phillip Cochran; he introduced himself to Cochran and left. Cochran left 15 minutes later and as he approached his car defendant walked over and asked him where he was going; learning that Cochran was going to Gardena to play poker, defendant advised him not to lose his money, suggesting that they return to the bar. They sat together in the bar and split the cost of a pint of whiskey. Thereafter, upon defendant's request, Cochran and defendant went to the 339 Club in Cochran's car; there they had a few beers and played some pool. When they decided to leave, defendant old Cochran that a third person was going with them; this person was a stranger to Cochran. The three got into the car and at defendant's direction, Cochran drove to defendant's home. On the way, around 2 a.m., they were

stopped by Officer Sutton because Cochran had driven through a red light; the officer gave Cochran a sobriety test. He noticed defendant and another person in the car but, Cochran having passed the test, the officer permitted them to proceed. When Cochran arrived at the house to which defendant had directed him, defendant told him to go inside; he did so because he thought he would like a drink. He parked the car, pocketed the keys and went into the house with the two men; they were joined by Jesse Fulton, who was already in the house. Cochran sat beside defendant on a couch and the third person poured drinks for all; then suddenly and without warning, the third person leaped forward and slashed Cochran across the face with a straight razor. He held up the razor and said, "You see this?" then told Cochran that it was a holdup and ordered him to take off his coat and get out his wallet. Cochran did as he was told. The third person ordered him to "Get off" his clothes; Cochran removed everything except his undershorts. The third person looked through all the pockets and examined his socks, and from Cochran's billfold removed $90; he also took loose change from other parts of Cochran's clothing. Then defendant, who had been watching, told Cochran he could put on his clothes but to stay steated and if he did not he (defendant) would kill him; after he dressed, defendant and the other two men left the room. Cochran heard them talking about dividing his money. A few minutes later defendant and Jesse Fulton returned; defendant again threatened to kill Cochran and wanted to know where he had the rest of his money hidden. Cochran said he had no more. Defendant, who approached him with his hands behind his back, told Cochran that unless they were told where the rest of the money could be found, he would kill him. Defendant "kept threatening" to kill him if he didn't tell him where he "had it stashed away"; Cochran begged and cried and told defendant he didn't have any more money; but if he did he would give it to him. Defendant, keeping his hands behind him all of the time, informed Cochran that he had a gun; Jesse Fulton told defendant to put the gun away and not kill him. Pleading for his life, Cochran then told defendant to take the keys to his car and search it and see if there was any money in it; defendant grabbed the keys and backed out of the front door. In a few minutes Cochran heard his car being started; he eased himself to the door and then bolted for freedom. He "never run so fast in [his] life," and after several blocks he found a police

officer to whom he reported the robbery. The automobile was later found by police in Santa Ana.

Defendant testified that he and Cochran went to the 339 Club where they met a stranger whom he did not know; later he asked Cochran to take him home and on the way they passed a house where once he had lived; Cochran suggested they go inside for a drink; Jesse Fulton, who paid the rent when he lived there, still resided there and they went inside; they sat down while the stranger came out of the kitchen with a knife and cut Cochran; he thrust himself between the assailant and Cochran to ward off the attack but stepped aside when his suit was cut; after the stranger emptied Cochran's wallet and pockets he got a cloth, wet it and wiped off Cochran's face because he was delirious, crying and shaking —"It was rather moving, I will say"; he was in the house when the stranger drove off in Cochran's car; he did not report the incident to the police but gave Cochran his calling card; when later informed that the police had been to his house, he called his parole officer, then the police.

In raising his first point, "Was defendant guilty of robbery?" appellant claims that he cannot be characterized as a principal simply because he was present while a crime was being perpetrated; he says he took no part in it, doing nothing to assist the robber, and that to be an abettor he must have rendered aid to the perpetrator and shared in his criminal intent. Appellant's argument is predicated on his own testimony which the jury found to be unworthy of belief.

█ It is the trier of fact, not the appellate court, that must be convinced of defendant's guilt beyond a reasonable doubt (*People* v. *Love,* 53 Cal.2d 843, 850 [3 Cal.Rptr. 665, 350 P.2d 705]; *People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal. Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]); the jury, having determined the credibility of the witnesses, weighed the evidence and resolved all factual conflicts *People* v. *De Paula,* 53 Cal.2d 643, 649 [2 Cal.Rptr. 764, 349 P.2d 532]; *People* v. *Jones,* 36 Cal.2d 373, 375 [224 P.2d 353]), accepted the testimony of the People's witnesses as true and rejected the defendant's version of what occurred. At this stage the test is not whether the evidence may be reconciled with innocence but whether there is substantial evidence in the record to warrant the inference of guilt drawn by the trier below. *People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Saterfield,* 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266].) █ Viewing the evidence

and all reasonable inferences to be deduced therefrom in a light most favorable to the prosecution (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), we are satisfied that there is ample proof to sustain the conviction of armed robbery. The record shows that it was defendant who, at the outset, approached Cochran at the bar by introducing himself and intercepting him when he started to leave for Gardena; that it was defendant who, upon learning Cochran had money with which to play poker, suggested they go back to the bar, requested Cochran to go to another bar of his (defendant's) choice, directing him there, asked Cochran to drive him home, told him that a third party (a stranger to Cochran) was going with them, directed him to the place where he was robbed, told him to go inside the house, stood by while the third party (whom defendant obviously knew and to whom he had brought Cochran) slashed Cochran with a razor and robbed him of his money, ordered Cochran to remain there while he and the other two went out of the room and split Cochran's cash, threatened to kill Cochran demanding more money, told him he had a gun and continued to threaten to kill him unless he told him where he had "it stashed away" and then grabbed Cochran's keys and drove away in his car.

Appellant's last point, "Can this court reduce sentence to second degree robbery?" is based on his own testimony in the trial that he was but a bystander. We are not concerned with the issue whether we can "reduce the sentence," for an examination of the record convinces us that a reduction of the offense or the sentence is neither warranted nor appropriate. Defense counsel made this same argument in the trial court in his motion to reduce the offense to second degree robbery. It was denied because the trial judge believed that there was no good cause to set aside the findings of the jury. Based upon the evidence, we are in agreement. The evidence shows that it was the third person who used the straight razor in cutting and robbing Cochran and that defendant was not personally armed with the weapon, but under the circumstances defendant is as guilty of first degree robbery as he. (*People* v. *Jones,* 211 Cal.App.2d 63, 72-73 [27 Cal.Rptr. 429]; *People* v. *Silva,* 143 Cal.App.2d 162, 167 [300 P.2d 25].) Defendant aided and abetted the actual robber; he was not only present during the commission of the crime but actively participated in its commission and shared the proceeds. The crime was not "one of the moment" as described

by appellant. Defendant deliberately "set up" Cochran for the robbery, inviting the third person, obviously his friend, to participate and directing Cochran to the scene of the robbery; moreover, defendant did some serious threatening of his own, either pretending to have a gun or actually carrying one behind his back, and then took Cochran's car. Defendant was a major participant in the crime. There is nothing in the record before us to justify a reduction of either the offense to second degree robbery or the sentence.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.