[Crim. No. 428.   Fifth Dist.   Sept. 6, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN LESLIE CRARY, Defendant and Appellant.

Lin H. Griffith, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Stephen Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Appellant John Leslie Crary was convicted of violating Penal Code section 211 (and pursuant to Penal Code section 211a the jury fixed the degree as robbery in the first degree) as charged in the information filed by the District Attorney of Stanislaus County which charged appellant and his codefendant, Frank Stanley Pust, Jr., with stealing $2 worth of gasoline by means of force and fear and the use of a deadly weapon. At the trial both defendants elected to defend themselves although they were offered the services of the public defender. Crary appeals from the judgment of conviction.

The facts, when viewed in the light most favorable to respondent, are essentially as follows. On the evening of December 10, 1966, appellant and Pust drove in appellant's car to the home of Louis Hooten, a 16-year-old boy, to borrow some money to purchase gasoline. Hooten gave appellant and his companion $1 and then went with them to the Terrible Herbst Service Station where they purchased gas. The station is on Highway 99 in Turlock and was being run by Herbert Marion Thorne, who recognized appellant as a former employee of that gas station.

Later appellant and his two companions picked up Darrell Kumaus, and then the group drove to downtown Turlock. Appellant parked his automobile, and he and Pust talked about robbing the Terrible Herbst Service Station. Appellant suggested clubbing Thorne and then rifling the register. He also asked Hooten and Kumaus to hold up the station since he and Pust were known to the attendant Thorne. Hooten and Kumaus refused to participate in the proposed robbery. Afterwards the group drove to Hooten's house where appellant (or Pust) first asked Kumaus and then Hooten if either had a gun they could borrow. Hooten gave them a .410 shotgun. The firing mechanism of this gun was defective, but the gun could be made to fire by someone familiar with it. Then Hooten and Kumaus parted company with the others.

Around midnight Thorne saw appellant and Pust drive back and forth past the service station several times. Later, about 2:30 or 3 a.m., appellant and Pust drove into the pump area of the service station. At that time Thorne was busy waiting on a customer. He finished with the customer and returned the money to the till inside the station. When he came out the door appellant and Pust drove up in front of him, got out of the car and offered Thorne a pair of pliers in exchange for some money to buy gasoline. Thorne refused the

offer. However, he noticed a gun partially covered by a shirt on the back seat of the car and asked if it was a .22. Appellant opened the car door, sat on the edge of the back seat, picked up the gun and pointed it at Thorne's chest. Appellant mumbled something which sounded to Thorne like "this is a stickup" or "this is a holdup." Then when Thorne asked if it was a holdup appellant replied, "That's what it means. That's what it looks like."

Thorne tried to talk the boys out of the holdup. He told them, "Boys, let's just talk this all over and think twice before you do it. I am talking to you father's advice." However, Pust told Thorne that they had "some girls" and needed the money to get out of town. Pust also suggested that Thorne claim colored people had held him up. Thorne answered, "The girls ain't worth going through this. As far as that, I'll put the gas, I'll give you some gas." Then Thorne took $2 from his pocket and said he would put $2 worth of gasoline in the car and make up the shortage with the $2. A woman drove into the station just as Thorne was finishing putting the gasoline in the car. Pust gave Thorne the pliers and he and appellant drove away. Thorne, however, testified he would not have given the boys the gas but for the threat with the gun.[1]

Appellant does not seriously contend that the evidence is insufficient to support his conviction of robbery. ▮ The rule on appeal is firmly settled that the test is not whether defendant was proven guilty beyond a reasonable doubt or whether the evidence may be reconciled with innocence, but only whether there is substantial evidence "to warrant the inference of guilt drawn by the trier below." (*People* v. *Shelton,* 251 Cal.App.2d 618, 621 [59 Cal.Rptr. 697].) His real argument, therefore, is that the evidence is such that the "close case" doctrine should be applied on this appeal so that even a minor error will justify reversal (see Witkin, Cal. Criminal Procedure (1954) § 755, p. 728). Accordingly, appellant inter alia contends that the court committed reversible error when it did not, *sua sponte,* instruct the jury on attempted robbery. This contention has merit.

▮ Arguably, the evidence is sufficient to sustain defendant's conviction of robbery under the substantial evidence test. Two witnesses testified that on the evening of December

---

[1]Thorne's testimony in this respect is somewhat equivocal. When asked by the district attorney "[i]f they did not have a gun would you have given them the gas," Thorne answered, "No, sir, I don't think I would."

10, 1966, appellant and Pust talked about robbing the filling station by clubbing the attendant. Later appellant and Pust armed themselves with a shotgun and then were seen "casing" the station. Afterwards, according to Thorne the boys returned to the station where appellant threatened Thorne with the gun and mumbled something that sounded like "holdup" or "stickup." Moreover, when Thorne asked if it was a holdup appellant replied, "That's what it means. That's what it looks like." And, significantly, while appellant held the gun on Thorne, Pust stated that they needed money and gasoline to get out of town.

■ However, the evidence, albeit bizarre, is also susceptible to the interpretation that appellant and Pust were guilty of attempted robbery and nothing more. Appellant did not pick up the gun until Thorne refused Pust's offer to purchase gasoline with a pair of pliers. Moreover, Thorne told the boys that there was money in the cash register; yet, only $2 worth of gasoline was taken even though the boys stated that they needed money. And, significantly, before leaving the filling station Pust handed Thorne the pliers. Thus, from these facts it would not be unreasonable for the jury to believe that the boys intended to rob the service station when appellant threatened Thorne with the shotgun but changed their minds after Thorne talked to them in a fatherly fashion, and that they took the gasoline under the impression that they had paid for it with the pliers. It also would not be unreasonable for the jury to believe that when Thorne placed the gasoline in appellant's car he was no longer operating under fear of bodily harm and did so voluntarily, believing that he had talked the boys out of robbing the station.

In short, robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) Thus, if appellant and Pust had changed their minds about robbing the service station when Thorne put the gasoline in appellant's automobile, and if they left with the impression that they had paid for it with a pair of pliers, they did not have the felonious intent required to commit robbery. Moreover, if Thorne placed the gasoline in appellant's car voluntarily under the belief that he talked the boys out of robbing him, the gasoline was not taken by means of force or fear within the meaning of Penal Code section 211. But, even so, the boys would have been guilty of attempted robbery for "[i]t is

generally held that when the defendant's acts go beyond mere preparation he is criminally liable for the attempt even though, before completion of the crime, he voluntarily abandons his purpose." (1 Witkin, Cal. Crimes (1963) § 104, p. 98.) ■ As the court stated in *People* v. *Carter*, 73 Cal. App. 495, 500 [238 P. 1059] : "There can be no doubt that mere intent by a single individual to commit a crime is not sufficient to amount to a criminal act. However, it is also unquestionable that after the intent has been formed and such intent has been coupled with an overt act toward the commission of the contemplated offense, the abandonment of the criminal purpose will not constitute a defense to a charge of attempting to commit a crime."

■ With this view of the evidence in mind, we conclude that the court erred when it failed to instruct the jury, *sua sponte*, on attempted robbery and that this error is prejudicial, requiring a reversal of the judgment. An attempt to commit robbery is for all intents and purposes treated as a lesser included offense of the crime of robbery (Pen. Code, § 1159).[2] It is settled that where there is evidence which would absolve the defendant from guilt of the greater offense of which he stands charged but would support a finding of guilt of the lesser offense, an instruction on the lesser offense is mandatory (*People* v. *Morrison*, 228 Cal.App.2d 707, 712 [39 Cal.Rptr. 874] ; *People* v. *Allison*, 245 Cal.App.2d 568, 573 [54 Cal. Rptr. 148]). Manifestly, the evidence to which we have referred might have absolved appellant from the guilt of the crime of robbery, but it also would have supported a conviction of the lesser offense of attempted robbery. Therefore, the instruction on attempted robbery was mandatory. ■ In fact, the jury was not even informed that a voluntary abandonment by appellant and Pust of their criminal purpose was a defense to the main charge. An instruction in this respect was also mandatory.

In view of the probability of another trial, we make the following brief comments with reference to appellant's remaining contentions.

■ Appellant argues that Hooten and Kumaus were his accomplices within the ambit of Penal Code section 1111 and that their testimony was essential to establish his intent to commit the robbery. Thus, appellant concludes that the court

---

[2]Penal Code section 1159 reads as follows: "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

should have cautioned the jury that the testimony of an accomplice is to be viewed with distrust (*People* v. *Dail,* 22 Cal.2d 642, 653 [140 P.2d 828] ; *People* v. *Hamilton,* 33 Cal.2d 45, 50 [198 P.2d 873] ; *People* v. *Bevins,* 54 Cal.2d 71, 76 [4 Cal.Rptr. 504, 351 P.2d 776]).

The witness Kumaus was not appellant's accomplice. There is nothing in the record to indicate that Kumaus participated in, profited by or encouraged appellant to commit the crime. On the contrary, the only evidence is that he was asked by appellant to commit the crime and refused to participate. This does not make Kumaus an accomplice (*People* v. *Irvine,* 45 Cal.App.2d 205 [113 P.2d 904]). On the other hand, Hooten loaned a shotgun to appellant after he heard appellant and Pust talking about robbing the Herbst service station and presumably with knowledge that it was going to be used for this purpose. Thus, it is arguable that this witness, "with guilty knowledge and intent, united in a joint undertaking with [appellant] and aided and abetted in the commission of the robbery." (*People* v. *Hailey,* 149 Cal. App.2d 453, 459 [308 P.2d 517].)[3] Consequently, the trial judge should have at least, under proper instruction, submitted to the jury the question of whether or not Hooten was an accomplice and then should have given the cautionary instruction (see *People* v. *Warren,* 16 Cal.2d 103, 119 [104 P.2d 1024]).

Appellant's next complaint is that the evidence was insufficient to support the jury's finding that he was armed with a deadly weapon. He argues that the gun was not capable of being fired and hence was not a deadly weapon within the purview of Penal Code section 211a.

This contention lacks substance. Although Hooten testified that the gun's firing mechanism was defective, he also stated that it was capable of being fired by one familiar with the gun. And since appellant did not testify that he did not know how to use the gun, the jury could properly infer that he was capable of doing so.

In any event, respondent was not required to prove that the weapon was loaded or capable of being fired. As the court stated in *People* v. *Rostamo,* 249 Cal.App.2d 983, 989 [58 Cal.Rptr. 74] : "Direct evidence that the revolver pointed at

---

[3] Admittedly, in *People* v. *Hailey, supra,* there was something more than the owner's knowledge that something of his was going to be used in a crime. Significantly, in *Hailey* the robbers also gave defendant $200 for the use of his car for one afternoon.

the two victims was lethal is not essential. . . . Defendant's declarations and conduct, and the weapon's description are sufficient to support an inference that at the time of the robberies he was armed with a deadly weapon." The court further stated at pages 990-991: "Indeed, this use of the revolver even before robbing either victim is indicative of defendant's predilection for force from which the reasonable inference could be drawn that even had the gun not been loaded and had the two men refused to obey his orders, in all probability, defendant would have used the weapon to hit his victims over the head. . . . A jury may be instructed that if it finds that the gun was real, whether loaded or not, then the crime committed is robbery in the first degree."

■ Appellant's final contention is that he was denied a speedy trial under the provisions of Penal Code section 1382; the information was filed on December 18, 1966, and the trial commenced February 27, 1967, 61 days later.

We take judicial notice that February 26, 1967, the 60th day after the filing of the information was a Sunday. Therefore, the maximum time prescribed by Penal Code section 1382 for setting a cause for trial was extended to Monday, February 27, 1967, the next business day (*Dulsky* v. *Municipal Court,* 242 Cal.App.2d 288, 290 [51 Cal.Rptr. 381]).

■ Moreover, the 60-day time limit of Penal Code section 1382 is not jurisdictional in the sense that it nullifies a conviction merely because the defendant was not tried in time. Defendant must show that the delay was prejudicial and that it affected the fairness of the trial (*People* v. *Wilson,* 60 Cal.2d 139, 153-154 [32 Cal.Rptr. 44, 383 P.2d 452]). The record does not indicate that defendant was prejudiced by the delay.

The judgment is reversed.

Stone, J., concurred.

CONLEY, P. J.—I concur in the result, believing that the judgment should be reversed and the jury fully instructed at a new trial as to an attempt to commit robbery. The jury should also be advised that if they should find that the defendant abandoned his purpose to rob after the "fatherly talk" of the service station attendant, he cannot be convicted of the completed crime of robbery.