[Crim. No. 14949. Second Dist., Div. Five. Aug. 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. STEVE LAW-
RENCE STEVENSON et al., Defendants and Appel-
lants.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kallay, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, Acting P. J.—By information filed on July 6, 1967, defendants Thompson and Stevenson were charged with the following offenses: in count I, Thompson was charged with kidnaping, in violation of Penal Code section 207; in count II, Thompson was charged with robbery, in violation of Penal Code section 211; in count III, Thompson was charged with rape, in violation of Penal Code section 261, subdivision 3; in count IV, Thompson was charged with oral copulation, in violation of Penal Code section 288a. In each of these four counts, the victim was one Miss F. In count V, Thompson and Stevenson, together with another codefendant, Paige, were charged with kidnaping for the purpose of robbery, in violation of Penal Code section 209; in count VI, Thompson, Stevenson, and Paige were charged with robbery, in violation of Penal Code section 211; in count VII, Thompson and Stevenson were charged with oral copulation, in violation of Penal Code section 288a. In these three counts, the victim was one Mrs. H.

Trial began on September 8, 1967, and defendants Thompson, Stevenson, and Paige pleaded not guilty to all counts. The jury found Thompson guilty of counts I and III, as charged. Thompson was also found guilty of count IV, the jury finding that the act was accomplished by force or threat of great bodily harm. Thompson and Stevenson were found guilty of count VII, the jury finding as to each defendant that the act was accomplished by force or threat of great bodily harm. Thompson was found not guilty of count II. Thompson and Stevenson and Paige were found not guilty of counts V and VI.

Probation as to defendant Stevenson was denied, and he was sentenced to state prison for the term prescribed by law. Probation as to defendant Thompson was denied, and being under the age of 21 years at the time of apprehension, he was "committed to the Youth Authority of the State of California for the term prescribed by law, on said counts." This is an appeal by Thompson and Stevenson from the judgments of conviction.

On the evening of May 11, 1967, at approximately 11 p.m., Miss F. was walking to the nearest bus stop to get a ride home. A car drove up alongside of her, a few words were

spoken to her, and then someone took Miss F. by the arm and forced her into the car. There were four Negro males in the car, and she later identified defendant Thompson as one of the men. The car then drove around the area and finally stopped at a park, and Miss F. was forced to get out of the car. One man, while holding Miss F., dumped the contents of her purse on the ground. The man kept the small amount of money found in the purse. She was then led into the men's room at the park and ordered to remove her undergarments. Miss F. was then forced to have sexual intercourse in turn with all four men who had been in the car, including Thompson. Afterwards, Miss F. was forced to commit oral copulation on all four men, including Thompson. Finally, the men left and she returned home. She called the police and gave them a description of the men. Some time later, the police requested Miss F. to come to the station and attend a lineup consisting of five male Negroes, and she identified Thompson as one of her assailants. She also identified Thompson in court.

On June 11, 1967, at approximately 5:30 a.m., Mrs. H. was walking along the street, going home. A car, driven by Thompson, pulled up to the curb. Codefendant Stevenson was seated in the front seat. After Thompson asked Mrs. H. which way she was going, she offered him a dollar to take her home. He agreed, and she got in the front seat of the car, between Thompson and Stevenson. While en route, she was struck on the back of the neck by someone in the rear seat whom she had not previously noticed. When she was struck, her purse and dentures fell on the floor of the car. She was then forced to commit oral copulation on Thompson and Stevenson. The car was moving slowly at this time, and Mrs. H. hit the accelerator pedal with her foot and called for help. A police car drove by with its siren on, and Thompson parked the car and the three men fled. When the police arrived, Mrs. H. was still in the car, and she told the police what had occurred. Her purse was not found in the car. Within 20 minutes, three men were apprehended. A short while later, she identified Thompson and Stevenson at the police station while they were being booked. She also identified Paige as one of the men who fled from the car. She again identified all three men the following day, June 12, 1967, at a police lineup. She subsequently made an in-court identification of the three men.

■ Defendant Thompson's first contention is that he was denied his right to counsel at the police lineup conducted on June 12, 1967, citing *United States* v. *Wade,* 388 U.S. 218 [18

L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] to support this contention. However, the *Wade* and *Gilbert* decisions have been held to be applicable only to cases involving lineups which occurred after June 12, 1967, the date of the *Wade* and *Gilbert* decisions. Therefore, they do not apply.

". . . We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel *after this date. . . ."* (Italics added.) (*Stovall* v. *Denno,* 388 U.S. 293, 296 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]; see also *People* v. *Harris,* 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]; *People* v. *Williams,* 255 Cal.App.2d 653, 662 [63 Cal.Rptr. 501]; *People* v. *Hunter,* 252 Cal.App.2d 472, 478 [60 Cal.Rptr. 563].)

As an adjunct to this contention, defendant Thompson argues that the lineups in which Miss F. identified him "resulted in such unfairness that it infringed his right to due process of law." (*Stovall* v. *Denno, supra,* at p. 299 [18 L.Ed.2d at p. 1204]; *People* v. *Caruso,* 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336].) The evidence shows that there was no unfairness in the conduct of the lineup. Miss F., the victim, positively identified defendant Thompson, a Negro from a lineup consisting of five Negroes. Miss F. identified him on the basis of his facial features. No facts showing unfairness were demonstrated. (*Stovall* v. *Denno, supra,* at p. 302 [18 L.Ed.2d at p. 1206].)

Defendant Thompson's second contention is that the evidence was insufficient to sustain his conviction of kidnaping Miss F. A conviction will not be reversed for insufficiency of the evidence unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached by the trial court. (*People* v *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Midkiff,* 262 Cal.App.2d 734, 739 [68 Cal.Rptr. 866]; *People* v. *Sullivan,* 255 Cal.App.2d 232, 236 [62 Cal.Rptr. 887].) [5] A reviewing court must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict. (*People* v. *Newland, supra,* at page 681; *People* v. *Grays,* 265 Cal.App. 2d 14, 18 [71 Cal.Rptr. 32].) The test on appeal is

whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911]; *People* v. *Crary,* 265 Cal.App.2d 534, 538 [71 Cal.Rptr. 457].) Miss F. testified that Thompson was in the car when she was forced into the vehicle. She also stated that he may have been the driver; that he consulted and conferred with his companions as to where to take her. The evidence produced by the prosecution was clearly sufficient to sustain the judgment.

 Defendant Thompson's third contention is that the prosecution failed to prove the element of penetration concerning the crime of rape alleged in count III. This contention is without merit. Miss F. testified to an act of sexual intercourse with defendant Thompson. Penetration may be proved by circumstantial evidence. (*People* v. *Minkowski,* 204 Cal.App.2d 832 [23 Cal.Rptr. 92].) Evidence that defendant committed an act of sexual intercourse with the prosecutrix necessarily means that penetration took place. (*People* v. *Swanson,* 204 Cal.App.2d 169 [22 Cal.Rptr. 178].) The victim's testimony does not require corroboration. (*People* v. *Burroughs,* 200 Cal.App.2d 629 [19 Cal.Rptr. 344].) The necessary elements constituting the crime of rape were clearly established. (*People* v. *Vasquez,* 190 Cal.App.2d 281 [11 Cal.Rptr. 924].)

 Next, defendant Thompson contends that his commitment to the Youth Authority as a result of his conviction of count I (kidnaping), count III (rape), and count IV (oral copulation) violates the provisions of Penal Code section 654.[1] Section 654 provides in part that an act or omission which is made punishable in different ways by different provisions of the code may be punished under either of such provisions, but in no case can be punished under more than one. It should be noted that section 654 refers to double punishment, not to multiple or double conviction. (*In re Pratt,* 66 Cal.2d 154, 156 [56 Cal.Rptr. 895, 424 P.2d 335]; *People* v. *Lindsey,*

---

[1]Penal Code section 654: ''An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. In the cases specified in sections six hundred and forty-eight, six hundred and sixty-seven, and six hundred and sixty eight, the punishments therein prescribed must be substituted for those prescribed for a first offense, if the previous conviction is charged in the indictment and found by the jury.''

249 Cal.App.2d 6, 10-11 [57 Cal.Rptr. 190].) There is no question that had the court pronounced sentence with commitment to the state prison, the contention here made as to the applicability of Penal Code section 654 would be correct.[2] The question remains: Is section 654 applicable to a commitment to the Youth Authority? In the present case, Thompson being under the age of 21 at the time of apprehension, the court exercised its discretion under Welfare and Institutions Code section 1731.5 and committed him to the California Youth Authority.[3] The order of sentence, after relating the four counts of which offenses defendant had been found guilty as charged, stated: "It is therefore ordered, adjudged and decreed that said defendant be committed to the Youth Authority of the State of California for the term prescribed by law, on said counts." By this order, the defendant was "sentenced." (*In re Smith*, 64 Cal.2d 437, 438 [50 Cal.Rptr. 460, 412 P.2d 804]; *People* v. *Ralph*, 24 Cal.2d 575, 581 [150 P.2d 401].) Had the sentence been to state prison (*In re Ralph*, 27 Cal.2d 866, 868 [168 P.2d 1]), it would be fairly construed as imposing concurrent sentences as applicable to each of the counts involved, and would violate the provisions of Penal Code section 654. (*In re Wright*, 65 Cal.2d 650, 652-653 [56 Cal.Rptr. 110, 422 P.2d 998].) Here, however, defendant was not sentenced in the same manner as in *Ralph*, leaving the sentence to state prison fully effective upon the Youth Authority's rejection of the referral. In the case before us, the certification to the Youth Authority was made before any sentence was pronounced; this is a proper alternative procedure. (*People* v. *Woolbert*, 232 Cal.App.2d 544 [42 Cal.Rptr. 919].) Had the court's reference been rejected by the authority, or, after acceptance, had defendant been returned in accordance with Welfare and Institutions Code section 1737.1,[4] it would *then*

---

[2]Conduct giving rise to more than one offense within the meaning of Penal Code section 654 may result in initial convictions of both crimes, but only the more serious offense may be punished. The appropriate procedure is to eliminate the effect of the judgment as to the lesser offense(s) insofar as the penalty alone is concerned. (*People* v. *McFarland*, 58 Cal. 2d 748 [26 Cal.Rptr. 473, 376 P.2d 449].)

[3]As originally drafted (1941), the statute required a referral of persons under age 23 to the Youth Correction Authority. In 1943, the title of the act was modified by deletion of the word "Correction." In 1944, the age specification was reduced to 21. In 1945, the mandatory provision of referral was deleted and provision made for discretionary reference. (See *People* v. *Sparks*, 262 Cal.App.2d 597, 599-600 [68 Cal.Rptr. 909].)

[4]Welfare and Institutions Code section 1737.1: "Whenever any person who has been charged with or convicted of a public offense and committed to the Authority, either at the time of his presentation or after having

have been the obligation of the trial court to "commit him [defendant] to a state prison . . . *as provided by law for punishment* of the offense[s] of which he was convicted." (Italics added.) As stated in *People* v. *Woolbert, supra,* 232 Cal.App.2d 544, 547: "The procedure outlined above was adequate under Welfare and Institutions Code section 1737.1 to warrant appellant's return to the jurisdiction of the court, and the court was by this procedure *reinvested* with the same power to pronounce judgment for conviction . . . as it had in the first instance." (Italics added.) It would be presumptuous for us to assume that if defendant is ever returned in accordance with Welfare and Institutions Code section 1737.1 the court will pronounce sentence other than in accordance with the provisions of Penal Code section 654.

So long as defendant remains committed to the Youth Authority, our expressions made in *People* v. *Wheeler,* 271 Cal.App.2d 205 at page 209 [76 Cal.Rptr. 842] warrant repetition. There, we said: "In California, commitment to the Youth Authority is not the equivalent of a sentence to state prison for punishment of a criminal conviction[5] (*People* v. *Wilkens,* 251 Cal.App.2d 823, 829 [60 Cal.Rptr. 49]; *In re Keller,* 232 Cal.App.2d 520 [42 Cal.Rptr. 921]; *People* v. *Zaccaria,* 216 Cal.App.2d 787 [31 Cal.Rptr. 383].) Hence, Penal Code section 654, which says that '[a]n act or omission *which is made punishable in different ways* by different provisions of the code may be punished under either of such provisions, but in no case can it be *punished* under more than one, . . .' (italics added), does not apply where commitment is in accordance with the provisions of section 1731.5 of

---

become an inmate of any institution or facility subject to the jurisdiction of the Authority, to be an improper person to be retained in any such institution or facility, or to be so incorrigible or so incapable of reformation under the discipline of the Authority as to render his retention detrimental to the interests of the Authority and the other persons committed thereto, the Authority may return him to the committing court. In the case of any person convicted of a public offense, said court may then commit him to a State prison or sentence him to a county jail as provided by law for punishment of the offense of which he was convicted. In the case of a person who has been committed to the Authority by a juvenile court, the juvenile court to which he is returned may make such further order or commitment with reference to such person as may be authorized by the juvenile court law, except that said court may not recommit such person to the Youth Authority."

[5] "Welfare and Institutions Code, section 1700 provides: The purpose of this chapter is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses. To this end it is the intent of the Legislature that the chapter be liberally interpreted in conformity with its declared purpose."

the Welfare and Institutions Code. [Footnote omitted.] We do not suppose that defendant is receiving two concurrent 'treatments' or that, if he is, he is in a position to object.''

Lastly, defendants Thompson and Stevenson argue that the evidence was insufficient to sustain their convictions of count VII (oral copulation). The standard on appeal for reviewing the sufficiency of the evidence has already been discussed. Mrs. F. testified that both defendants forced her to commit the charged act. Her identification was positive. The fact that defendants' stories were diametrically opposed to the testimony given by the victim is of no consequence since credibility is for the trier of fact to determine. (*People* v. *Chavez*, 268 Cal.App.2d 381 [73 Cal.Rptr. 865].) The evidence was clearly sufficient to sustain the convictions.

The judgments are affirmed.

Aiso, J., and Reppy, J., concurred.

The petition of appellant Stevenson for a hearing by the Supreme Court was denied October 15, 1969.