[Crim. No. 264. Fifth Dist. Oct. 11, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES ALLISON, Defendant and Appellant.

Laurence L. Angelo, under appointment by the District Court of Appeal, for Defendant and Appellant.

570

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Ronald W. Tochterman, Deputy Attorneys General, for Plaintiff and Respondent.

McMURRAY, J. pro tem.*—Defendant appeals from judgments entered on jury verdict finding him guilty of three counts of burglary, two counts of violation of section 288a of the Penal Code, two counts of forcible rape, and one count of assault with intent to commit rape. These offenses were committed against three women. The sentences on the burglary counts were suspended. The sentence as to one count of violation of section 288a of the Penal Code was to run concurrently with the sentence of one count of forcible rape. These offenses were against Miss D. The count of assault with intent to commit rape, committed against Mrs. H, was to run consecutively to the counts affecting Miss D, and the sentences on the counts of violation of section 288a of the Penal Code and forcible rape committed against Mrs. B were ordered to run concurrently, but consecutively to the counts affecting Miss D and Mrs. H.

Appellant contends that the failure of the trial court to instruct on its own motion regarding the lesser included offense of simple assault within the charge of assault with intent to commit rape, the failure of the court to instruct on the felonies which would be necessary to find appellant guilty of burglary, and the insufficiency of the foundation laid for introduction of a writing used to impeach appellant, together with the inadequacy of representation afforded by trial counsel, require a reversal.

At about 11:30 p.m. on April 27, 1965, Miss D locked the door of her apartment in North Sacramento and went to bed. At approximately 3 a.m. she was awakened by appellant who was leaning over her bed. He stated, "Don't scream and you won't get hurt," proceeded to commit the violation of section 288a upon the person of Miss D, and had sexual intercourse with her twice. Appellant had a slight southern accent. Miss D was frightened and crying. She testified that she had a good look at appellant, and identified appellant as the man who attacked her.

Mrs. H lived in an apartment in North Sacramento. At about 3 p.m. on May 1, 1965, three days after returning from the hospital with her newborn baby, she saw appellant at her apartment house swimming pool with another woman who

---

*Assigned by the Chairman of the Judicial Council.

lived in the same apartment house. Mrs. H talked to appellant for approximately two hours, drank a beer with appellant and the other lady, and later that night, at about 11 p.m., being alone except for her two daughters and a child of a neighbor's for whom she was babysitting, she went to bed. At about midnight she heard someone come into the apartment; she had left the door unlocked so that the neighbor could pick up her child, and at first she thought it was the neighbor. When a man came into the bedroom, she thought it was her husband and called his name. The man got into her bed fully clothed, kissed her on the mouth and called her "honey" and "darling." It was dark; she did not recognize appellant by sight; but when he spoke, she recognized his voice as that of the man she had met at the pool that afternoon. Appellant put his arm across her neck, trying to hold her down. She told him she wanted to get up and go to the bathroom and he said, "No, you don't have to." Her 3- or 4-day-old baby made some noise, and she told appellant she had to get up to attend to the baby. Appellant let her out of bed and followed her into the living room where the baby was. Mrs. H there saw and recognized appellant. As she bent over to care for the baby, appellant put his arm around her waist; she pushed him back and said, "Let me tend to the baby." He stepped back, then came back and put his arm around her again. She pushed him back and yelled as loudly as she could. Appellant made a gesture with his fist raised. He lowered his hand and walked out. Mrs. H locked the door and called the police.

Mrs. FH testified to a similar occurrence shortly after the occurrence in Mrs. H's apartment. Mrs. FH also lived in North Sacramento. Appellant was not tried for this offense. Mrs. FH had gone to bed at about 11:45 p.m. She had had a baby 10 days before, but that baby was still in the hospital. At 12:30 or 12:45 a.m. appellant entered through the unlocked door of her apartment and went into Mrs. FH's bedroom. She screamed; he put his hand around her throat and told her to keep quiet and nothing would happen. He made his intentions known in coarse language. She was crying and told him she had just had a baby, and asked him not to do anything. Appellant said he wouldn't, but later indicated that he desired sexual intercourse. She pleaded for him not to since she had just had a baby. He pulled her nightgown back, looked at her and said to her that she was right—she was in no shape. He put his hand on her breast and the lower part of her body and again asked her if she didn't want to have sexual intercourse.

She said that she was sure she did not. He asked her if she wanted to get dressed and go out and she said "No." Appellant left, telling her to stay in bed, but about 5 minutes later Mrs. FH got up, put on her coat and started out the door to call her husband. Appellant was waiting outside and grabbed her and choked her, telling her that he would not leave until she promised to go back to her bedroom and not tell anyone what had happened. Mrs. FH had no doubt about appellant's identity as the man who attacked her.

On the same early morning in North Sacramento, appellant entered an apartment occupied by Mrs. B. She had gone to bed about 1:30 a.m. Her 4-year-old daughter was sleeping in the same bedroom. At about 3:30 a.m. a man came into the bedroom. She jumped out of bed and asked him what he wanted. He said, "Shut up and I'll tell you what I want." He stated he didn't want any money; he wanted to have sexual intercourse with her. Mrs. B tried to dissuade him. Appellant looked at her daughter, said she was cute, and asked Mrs. B how she would like him to attempt intercourse with her daughter. Appellant grabbed Mrs. B by the throat and when she tried to scream, squeezed her and told her to keep her voice down and be quiet. Mrs. B slid or was pushed to the floor, appellant lifted her nightgown, put his hands upon her and committed an act in violation of section 288a upon her person, and had sexual intercourse with her after which he told her to lie down on the bed. He then left. The police were called and discovered a chair outside the house under a window which had not been there earlier in the evening. Appellant's fingerprints were discovered on the windowsill under which the chair was found. Mrs. B did not get a look at the face of her assailant and was unable to make a sight identification, although she stated that appellant was about the same size and build as her assailant. After the attack she picked appellant out of a police lineup, identifying him by his voice and his slight southern accent.

Appellant raised the defense of alibi as to the counts involving Miss D, and admitted having visited Mrs. H but stated that he had never made any advances nor had he touched her in any way. Regarding the offense testified to by Mrs. FH, appellant also raised the defense of alibi and he denied ever having been in either Mrs. FH's or Mrs. B's apartment on the evening of May 1 or the morning of May 2.

The claimed reversible error by reason of the court's having failed to instruct on its own motion regarding the lesser included offense of simple assault on the assault with intent to

commit rape count is grounded upon cases such as *People* v. *Jackson*, 59 Cal.2d 375, 380 [29 Cal.Rptr. 505, 379 P.2d 937]; *People* v. *Dukes*, 241 Cal.App.2d 488 [50 Cal.Rptr. 609]; *People* v. *Ali* *(Cal.App.) 50 Cal.Rptr. 751; and *People* v. *Wade*, 53 Cal.2d 322, 334 [348 P.2d 116], where it is said: "In determining what instructions a trial court is required to give without request, the rule is usually stated to be that the court has a duty to give instructions on the general principles of law governing the case, even though not requested by the parties, but it need not instruct on specific points developed at the trial unless requested. . . .

"The rule seems undoubtedly designed to promote the ends of justice by providing some judicial safeguards for defendants from the possible vagaries of ineptness of counsel under the adversary system. Yet the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly. The judge need not fill in every time a litigant or his counsel fails to discover an abstruse but possible theory of the facts.

"The most rational interpretation of the phrase 'general principles of law governing the case' would seem to be as those principles of law commonly or closely and openly connected with the facts of the case before the court." Respondent contends that the court need not instruct on lesser offenses unless requested to do so. No such request was made in this case. *People* v. *Calderon*, 155 Cal.App.2d 526, 530 [318 P.2d 498]; *People* v. *Walker*, 155 Cal.App.2d 273, 275 [318 P.2d 77]; Witkin, California Criminal Procedure (1963) Trial, section 480, pages 486-487, seem to support the respondent's position. The case of *People* v. *Morrison*, 228 Cal.App.2d 707 [39 Cal.Rptr. 874], outlines the various situations relative to the court's duty to give instructions upon a lesser included offense or degree. The rules there set forth may be summarized, generally, as follows: The first instance is where there is evidence which could absolve the defendant from guilt of the greater offense or degree but would support a finding of guilt of the lesser offense or degree, in which case the instruction is mandatory, even though not requested. In the second situation where the evidence would not support a finding of guilt of the lesser offense or degree—for example, where the defendant denies any complicity in the crime charged or the elements of

---

*A hearing was granted by the Supreme Court on June 29, 1966. The opinion of that court, filed March 27, 1967, is reported in 66 Cal.2d —— [57 Cal.Rptr. 348; 424 P.2d 932].

the offenses differ—the instruction is not only unnecessary but is erroneous because it is not pertinent. ▮ In the third instance, the intermediate situation, where the evidence is sufficient to support a finding of guilt of either the greater or the lesser offense, the instruction is proper but not mandatory, and, even if requested, it is not error to refuse it if the evidence shows guilt above the lesser offense.

▮ Viewing the evidence in the instant case, it is difficult to see how the situation presented by the assault with intent to commit rape count can fit into any other than the third category set forth in *Morrison*. The evidence admits of one of two conclusions—either appellant assaulted Mrs. H with intent to commit rape, or appellant's overtures were entirely devoid of criminal intent. The fact that appellant testified he did not touch Mrs. H at all would appear to put this offense within the third category. The entire evidence which includes two incidents of forcible rape, one following shortly after the incident involving Mrs. H, together with a similar attempted forcible rape or assault with intent to commit rape on Mrs. FH shortly after the incident with Mrs. H strongly convinces that no lesser included offense need be instructed on under such a set of facts. *People* v. *Nye*, 38 Cal.2d 34 [237 P.2d 1], is a case remarkably parallel to that presented by the count of assault with intent to commit rape in the instant matter. There, too, the defendant contended that his conduct, standing alone, did not show with what intent he made the assault. However, it is said there, "When a strange man enters a woman's bedroom, covers her mouth with his hand, grasps her wrist while she screams and kicks, releases her when she bites his hand, and makes no effort to take any property, it is reasonable to infer that he intended to commit rape, particularly when such an intent is shown by his attempt to rape another woman under similar circumstances." (P. 37.) ▮ The evidence here admitted of the assault against Mrs. FH, together with the evidence of the other rapes, was properly admitted. In *People* v. *Nye, supra*, 38 Cal.2d 34, 37-38, it is said: " 'In such cases, former acts of the same kind are relevant to negative the intent as being of any other kind than to commit rape. Where the charge is of assault with intent, the propriety of such evidence cannot be doubted.' [Citing cases.] " It appears that nothing that is said in *People* v. *Failla*, 64 Cal.2d 560 [51 Cal. Rptr. 103, 414 P.2d 39], applies to the assault with intent to commit rape count. That case, revealing as it does an extremely bizarre set of circumstances, does not reveal the same clarity of purpose that is shown by the evidence before us. The

language in *People* v. *Roth,* 228 Cal.App.2d 522, pages 530-531 [39 Cal.Rptr. 582], again must be limited to the facts there set forth. The circumstances of that case show that it was purely a matter of inference whether the assault was of the severity contemplated by the Penal Code section 245, or of the simple misdemeanor referred to in section 240. The defendant here denied any assault; there is no admission on his part that he ever touched Mrs. H in any manner. It would appear that this case is one which might come within the language of *People* v. *McCoy,* 25 Cal.2d 177, 187 [153 P.2d 315], where it is said, ". . . where the evidence is such as to make it clear that if the defendant is guilty at all, he is guilty of the higher offense." It is difficult to see how any reasonable inference of simple assault could be based upon the evidence presented to the jury on the count charging assault with intent to commit rape.

Assuredly, the court might well have instructed upon the lesser included offense of simple assault; however, it cannot be said that counsel's failure to request such an instruction shows any delinquency of representation on his part since it seems to have been appellant's contention throughout that he had committed no act which was in any way punishable or reprehensible and the very requesting of an instruction on a lesser included offense might well have been deemed by appellant to have been against his interests in that it might in effect appear that he was asking for the conviction of a lesser crime.

Appellant also contends that reversible error occurred by failing to instruct as to the definition of a felony as regards the burglary counts. Under the holding of *People* v. *Failla, supra,* 64 Cal.2d 560, this appears to be well taken. The failure of the court in *Failla* to instruct on the definition of those felonies which could constitute burglary was held to constitute reversible error, and the same reasoning would apply here. It is of little assistance to a lay jury to tell them that burglary consists in entering a building with a felonious intent without defining what it meant by "felony." This is not a matter of common knowledge, but is a matter which requires that the jury be clearly and fully instructed. Respondent asserts that the argument regarding the burglary counts is moot since sentence was not imposed, but it appears that convictions are reviewable where the trial court fails to impose sentence based on the punishment prohibitions contained in Penal Code section 654. (*People* v. *Jenkins,* 231 Cal.App.2d 928, 934 [42 Cal.Rptr. 373] ; *People* v. *Dozier,* 236

Cal.App.2d 94, 99 [44 Cal.Rptr. 770].) ██ ██ Appellant further contends that error was committed in allowing the prosecutor to impeach, and to argue to the jury regarding a handwritten note admitted in evidence and by the court failing to give a cautionary instruction relative to such exhibit. The objection to the introduction of the exhibit is based upon the fact that it was not properly authenticated. No objection of authentication was raised at the time of trial. A careful examination of the record, together with an examination of the particular handwritten note, convinces that the note was properly admitted into evidence and was properly considered by the jury, either as evidence of consciousness of guilt or as evidence of an attempt to fabricate an alibi defense. The appellant takes three sentences out of the note and argues that he only admitted writing one part of the note and did not admit writing the rest of the note. However, the most casual inspection of the note shows without doubt that it was written in the same hand. The substance of the note is as follows: "There were two girls that picked me out of the lineup. This girl's name is [Mrs. H]. Her husband's name is Bob. I let you know her phone number tomorrow afternoon. Her address is Apartment Number 3 Dixieanne Apartments, North Sacramento. So I'll fix you up when I get out if you do this. I have money, so let me know by Friday what happens. Listen, the girl [Miss D] works at Cal Western Life Insurance Company, phone 444-7100. Home address is 833 O Street, Rio Linda.

"340 Rimmer Avenue, North Sacramento. I go with you if I get out. Love Chuck. If anyone asks you I have known you a year. The last time I seen you on a date was May 1st, from 12 that night till 4 in the morning. That was Saturday night. Thank you. Love, Baby."

██ An attempt to fabricate an alibi is admissible as an implied admission of consciousness of guilt. (*People* v. *Downs,* 114 Cal.App.2d 758, 761 [251 P.2d 369] ; see also Witkin, Cal. Evidence (1958) § 240, p. 274.) ██ Regarding the use of writing as such an implied admission, appellant argues that the judge on his own motion should have given a cautionary instruction that is in the language of CALJIC 30-B :

"Evidence that a defendant attempted to persuade a witness to testify falsely or tried to manufacture evidence to be produced at the trial, may be considered by you as a circumstance tending to show a consciousness of guilt. However, such evidence is not sufficient in itself to prove guilt and its weight and significance, if any, are matters for your determination."

Such an instruction would have been proper, but the court did not have to give this instruction on its own motion. The letter itself is not an admission, but is an exhibit from which an inference might be drawn. Even if it were error for the court to fail to instruct, as appellant belatedly urges, no prejudicial error appears to have been occasioned through the lack of such instruction.

As a final ground for reversal, appellant contends that the inadequacy of his trial counsel deprived him of a fair trial. This argument is one which is presently the ''mode,'' but it finds little support in the record before us. The fact that counsel failed to request certain specific instructions does not appear to show that counsel was so inept as to come within the statements in *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], so as to reduce the trial to a ''farce,'' or ''sham.'' ▇▇▇ Appellant also urges that the failure to object to certain questions and to the admission of the hand-written letter into evidence shows that counsel was so inept as to deprive him of a fair trial. The record shows that trial counsel was alert and gave appellant as good representation as he could. A lawyer cannot change the evidence which is presented in court, and often the repeated interposition of objections and requests for doubtful and unusual instructions can only prejudice the defendant's case. Trial counsel attempted to present the defense in accordance with what defendant's position was at the time of trial. To now contend that some other position should have been urged is certainly not to show that trial counsel was inept.

The judgments of guilt as to burglary and the orders suspending pronouncement of sentence thereon are reversed; the remainder of the judgments are affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied November 7, 1966, and appellant's petition for a hearing by the Supreme Court was denied December 7, 1966.