[Crim. No. 575.   Fifth Dist.   Aug. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD GRIGSBY et al., Defendants and Appellants.

Donald F. Manfredo and Eugene L. Adams, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Donald J. Kremer, Nelson P. Kempsky and Peter G. DeMauro, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, Acting P. J.—On January 26, 1968, the District Attorney of Fresno County filed an information charging appellants Edward Grigsby and Elizabeth Jane Sherman with armed robbery (count I), assault with a deadly weapon (count II), grand theft auto (count III) and attempted murder (count IV). On April 1, 1968, the day of the trial, the

district attorney moved the superior court to amend count I of the information in order to allege that appellants intended to and did in fact inflict great bodily injury on the victim, Herman Williams, during the commission of the robbery charged in that count. The motion was granted by the court over appellants' objections. However, the court neglected to arraign appellants on the amended information, and the cause proceeded to jury trial without a new plea. At the conclusion of the trial the jury returned verdicts finding appellants guilty on counts I, II and IV as charged. As to count III, the jury found appellants guilty of the lesser included offense of joy riding. The judgments were entered on the jury's verdicts, and appellants have appealed.[1]

The facts, when viewed in the light most favorable to respondent, are substantially as follows: Herman Williams, who lived in Challenge, California, met Wilma Shell in a bar on Tulare Street on the evening of December 24, 1967, at about 11:30 p.m. Wilma introduced Williams to appellants Edward Grigsby and Elizabeth Sherman. The foursome then remained at the bar for approximately 30 minutes, drinking and socializing. Afterwards, they all left in Williams' car and drove to another bar.

Williams and his newly found companions were at the second bar for about 45 minutes when Wilma asked Williams to take appellants home. Williams agreed. He also agreed to let Wilma drive his car while he sat in the front seat on the passenger side. Appellants sat in the back seat. Then, Wilma drove the car toward the country.

When the group arrived in the country, Wilma suddenly put on the brakes and stopped the car. She threw her arms around Williams and removed his wallet. At about the same time Grigsby hit Williams on the head from behind. Elizabeth Sherman then attacked Williams with a knife, stabbing him at least five times about the arms and chest. In the meanwhile, Grigsby continued to beat Williams and told Elizabeth Sherman to "[k]ill him." However, Williams managed to roll out of the car, got to his feet and ran to a nearby farm house. He collapsed on the porch, bleeding profusely. Later Williams was taken to the hospital where he was treated for five stab

---

[1]Appellants were sentenced on each count to state prison for the term prescribed by law. However, the sentences imposed in connection with counts II, III and IV were stayed, pending final determination of any appeal from the convictions on count I and for the duration of any sentences which they may be required to serve on that count, at which time the stay shall become permanent.

wounds, four in the chest within the proximity of the heart and one through the muscle of the left forearm.

At appellants' trial Wilma Shell, who had pleaded guilty to armed robbery, testified for the prosecution. She stated that she and the appellants left the second bar with Williams in Williams' car and drove to the country. She admitted taking Williams' wallet and corroborated his version of the stabbing insofar as appellant Sherman was concerned. However, she said that appellant Grigsby did not know of the crime beforehand, did not hit Williams and did not aid or abet in the stabbing. She also testified that after Williams made good his escape she, Grigsby and Sherman left in his automobile, returned to town and separated.

### Appellants' Joint Contentions

Appellants assert that the trial judge improperly permitted the district attorney to amend count I of the information on the day of the trial and then compounded his error by permitting the cause to proceed to trial without giving appellants the opportunity to plead to the count as amended. However, we note that appellants' trial counsel did not object to the proposed amendment on the ground that appellants were misled and unprepared to meet the new issue. On the contrary, trial counsel told the court "our preparation is basically the same," and then objected solely on the ground that the evidence adduced at appellants' preliminary hearing did not support the amendment as required by Penal Code section 1009. We shall restrict our discussion accordingly.

It is of course true, as appellants contend, that no medical evidence was introduced at the preliminary hearing describing the nature or extent of the wounds received by Williams during the commission of the robbery. Nevertheless, Williams testified that Grigsby hit him in the temple shortly before the car came to a stop, and then Elizabeth Sherman stabbed him five times with a knife. He said that Grigsby continued to beat him during the stabbing and told Elizabeth Sherman to "[k]ill him." He also testified that he received four stab wounds in the chest in the vicinity of his heart and one through the muscle of his right arm and that "the only thing that saved my life, mind you, was I finally got a foot up where I could kick her, and I rolled out of the car." Thus, from this testimony alone, there was reasonable or probable cause for the trial judge to believe that appellants *intended to* and *did in fact* inflict great bodily injury on their robbery

victim (see *People v. McGee*, 31 Cal.2d 229 [187 P.2d 706]; Pen. Code, § 739). And, since the amendment did not change the gravamen of the offense charged in count I, it was properly allowed under Penal Code section 1009.[2]

At this point we note parenthetically that the cases cited by the Attorney General for the proposition that the wounds inflicted on Williams were sufficient to constitute "great bodily injury" under section 213 are not necessarily controlling. They are all concerned with Penal Code section 245 which focuses on the "force likely to do great bodily injury," not necessarily on the resulting injury. However, to invoke the minimum punishment prescribed by Penal Code section 213 for the crime of robbery, the People must not only allege and prove that the defendant *intended* to inflict great bodily injury on the victim of the robbery but that he *actually* did so. Thus, under this section it is the nature and extent of the injury, as well as its location and the force used, which are controlling. Nevertheless, Williams testified that he received four stab wounds in the vicinity of the heart and one through his right arm. He also testified that he collapsed on a farmer's front doorstep bleeding profusely and was hospitalized. Manifestly, the court could reasonably infer from this testimony that the wounds which Williams received could have resulted in serious disability and even death, and hence caused him "great bodily injury" within the ambit of section 213.

Appellants' secondary contention that it was error for the trial judge to fail to arraign them on the information as amended has merit (Pen. Code, §§ 1009, 1017, 988). Nevertheless, the error does not require reversal. Appellants' trial counsel failed to object at the trial level, and the objection may not be raised for the first time on appeal (*People v. Franklin*, 202 Cal.App.2d 528 [21 Cal.Rptr. 29]; *People v. Walker*, 170 Cal.App.2d 159, 164 [338 P.2d 536]). Moreover, where as here, there is no arraignment or plea but the case is tried as if a "not guilty" plea has been entered, no miscar-

---

[2]The amendment did not state a new and different cause of action but still charged appellants with armed robbery and merely sought to invoke the minimum penalty provision of section 213. This section provides in pertinent part: "The preceding provisions of this section notwithstanding, in any case in which defendant committed robbery, and in the course of commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery . . . defendant shall suffer confinement in the state prison from 15 years to life."

riage of justice results from the procedural error (*People* v. *Sturdy*, 235 Cal.App.2d 306 [45 Cal.Rptr. 203]).

APPELLANT SHERMAN'S SEPARATE CONTENTIONS

■ Appellant Sherman contends she was the victim of an illegal lineup, because she was not informed of her right to have counsel present. She also alleges she was the only redhead in the lineup, and hence it was unnecessarily suggestive and conducive to mistaken identity.

■ It is now firmly settled that if a defendant is not informed of his right to have counsel present at a lineup, an in-court identification by a witness who also identified him at the lineup is impermissible unless the People establish by "clear and convincing evidence" that the in-court identification was not influenced by the lineup (*U.S.* v. *Wade*, 388 U.S. 237 [18 L.Ed.2d 1162, 87 S.Ct. 1926]; *Gilbert* v. *California*, 388 U.S. 267 [18 L.Ed.2d 1183, 87 S.Ct. 1751]). ■ It is also firmly settled that if a lineup is unduly suggestive it is tainted, and "[t]o overcome the effect of the taint, the People must . . . show by clear and convincing proof that the in-court identifications were based on observations of the accused at the scene of the robbery." (*People* v. *Caruso*, 68 Cal.2d 183, 189 [65 Cal.Rptr. 336, 436 P.2d 336].) ■ However. even if we should assume that appellant was not advised of her right to have counsel present at the lineup, or that it was unduly suggestive, we need not reverse the judgment, because the allegedly illegal lineup did not taint the in-court identification. ■ In short, it is clear beyond a reasonable doubt that Williams' in-court identification of appellant was based on his observations of appellant before and at the scene of the crime and was not influenced or induced by anything that may have occurred at or during the lineup.[3]

---

[3]Albeit appellant's trial counsel interposed an objection to Williams' in-court identification, he did not state the ground for his objection. Under these circumstances, it is arguable that the objection was waived. It is the rule that a lineup objection may not be made for the first time on appeal (*People* v. *Davis*, 270 Cal.App.2d 841 [76 Cal.Rptr. 242]; *People* v. *Rodriguez*, 266 Cal.App.2d 766 [72 Cal. Rptr. 310]). It is also the rule that a waiver occurs if the objection at the trial level is insufficient in form and does not clearly state the proper ground (Witkin, Cal. Evidence (2d ed. 1966) § 1285, p. 1188.) However, we are reluctant to so hold in this case. Before the trial commenced the prosecutor informed the trial judge that defense counsel was going to raise "some question about a lineup." Nevertheless, the trial judge, without waiting for an explanation, stated, in essence, that he would deal with the problem when it arose during the trial. Then, when defense counsel objected to appellant's in-court identification by Williams, the judge again, without waiting for an

774

First, Williams met appellant, Wilma Shell and Edward Grigsby at a bar where they drank and socialized together for at least 30 minutes. Then he drove the trio to a second bar, where they remained together for about 45 minutes. In addition, Williams was with the robbers while they drove to the country. Thus, unlike *People* v. *Caruso, supra,* this is not a case in which the victim of the robbery had but a fleeting glance at the robber under highly dramatic circumstances. On the contrary, in this case the victim had ample opportunity to observe his assailants for a considerable period of time under relaxed and casual circumstances.

Second, appellant and Wilma Shell are dark complexioned and of Mexican or Indian extraction. The lineup contained four women in addition to Wilma Shell and appellant, and these women were also dark complexioned and of Mexican or Indian extraction. Yet, Williams not only immediately and unhesitatingly picked appellant, who admittedly was the only person in the lineup with red hair, but he also unhesitatingly picked Wilma Shell.[4]

Third, appellant did not have an alibi, as in *Caruso,* nor did she interpose any other defense to the charges lodged against her other than her plea of "not guilty." Moreover, her accomplice Wilma Shell, testified that she, appellant and Edward Grigsby were with Williams on the night of the robbery and that appellant stabbed him. Thus, unlike Caruso, we are not here concerned with a case of possible mistaken identity. Williams was either robbed and stabbed by appellant as he testified, or he and Wilma Shell were lying and he was not robbed at all.

### APPELLANT GRIGSBY'S SEPARATE CONTENTIONS

We turn next to appellant Grigsby's remaining contentions for reversal of the judgment against him. These contentions are that the trial judge committed prejudicial error when he refused to instruct the jury on the lesser included offense of simple assault, and that the judge improperly influenced the jury in arriving at a desired result.

---

explanation, abruptly overruled the objection. Consequently, although we cannot tell whether appellant was objecting to the lineup on the ground that she was not advised of her right to have counsel present or on the ground that it was unduly suggestive, the problem with which we are now faced was created, in part at least, by the court's impatience.

[4]Detective Sergeant Richard Boulwar testified: ". . . he walked up to the window and without any hesitation at all, he said, 'three and five.' "

Significantly, appellant Grigsby relied entirely on an alibi defense. Moreover, the instruction on the lesser included offense of simple assault which the court refused to give was requested by respondent, not Grigsby. Nevertheless, Grigsby asserts that the instruction should have been given because there was evidence that he kicked Williams after Williams rolled out of the car. He suggests that the jury might have believed Wilma Shell's testimony that he (Grigsby) did not know of the crime beforehand and did not aid or abet in the stabbing, but that they might also have believed Williams' testimony that he kicked Williams as Williams rolled out of the car and then found him guilty for this if for no other reason. Grigsby therefore concludes that the instructions should have been given even though he relied entirely on an alibi defense and did not request the instruction on the lesser included offense.

Admittedly, the crime of simple assault is a lesser included offense of the greater crime, assault with a deadly weapon. Moreover, arguably there was evidence in the instant case which would have supported a finding of guilt of the lesser offense. However, the evidence that Grigsby kicked Williams as he rolled out of the car would not necessarily have absolved Grigsby of complicity in the greater offense as Sherman's accomplice even if the jury believed that this was the only time that Grigsby actually hit Williams. Thus, the instruction on the lesser offense was not mandatory (*People* v. *Crary,* 265 Cal.App.2d 534, 540 [71 Cal.Rptr. 457]; *People* v. *Allison,* 245 Cal.App.2d 568 [54 Cal.Rptr. 148]; *People* v. *Morrison,* 228 Cal.App.2d 707 [39 Cal.Rptr. 874]). And, since Grigsby did not request an instruction on the lesser offense but relied entirely on his alibi defense, the trial judge correctly refused to give the instruction which was proffered by respondent. ▇ In short, where, as here, the evidence of the lesser offense does not absolve a defendant of the greater offense but nevertheless is sufficient to support a finding of guilt of either the greater or lesser offense, the instruction on the lesser offense is not mandatory and should be given only if requested by the defendant (*People* v. *Morrison, supra,* 228 Cal.App.2d 707).

▇ In any event, the jury not only found appellant guilty of assault with a deadly weapon, but they also found him guilty of robbery and attempted murder. Thus, the jury must have rejected Wilma Shell's testimony that appellant did not know of the crime beforehand and did not aid or abet

in the robbery and in the stabbing. In other words, the jury obviously rejected appellant's alibi defense and believed Williams'- entire version as to what occurred on the night of the robbery. It is therefore highly improbable that the jury would have exonerated appellant of all the major offenses for which he was convicted had the trial judge instructed on the lesser included offense of simple assault. In fact, it stretches the imagination to even consider such a possibility. Consequently, it is clear that the trial judge did not err when he refused to give the instruction on simple assault, or, if so, that his error was harmless. ■ As the court held in *People* v. *Allison*, 245 Cal.App.2d 568, 574 [54 Cal.Rptr. 148], even if an instruction on a lesser included offense is properly requested, "it is not error to refuse it if the evidence shows guilt above the lesser offense."

■ According to the record, the jury initially returned a verdict finding appellant Grigsby guilty of armed robbery, not armed with a deadly weapon, but inflicting great bodily injury, and guilty of attempted murder, but not guilty of assault with a deadly weapon. The judge then stated that the verdict was inconsistent and questioned the foreman as to its basis. The foreman informed the judge that the jury believed that Grigsby aided and abetted in the commission of the crimes but did not understand that Elizabeth Sherman's *possession* and *use* of the deadly weapon could be imputed to Grigsby. Upon receiving the foreman's explanation, the judge stated: "Then I would ask that you had better go back in the jury room and make sure that is your finding and correct it accordingly because it would have to be a finding then of that he was possessed with a deadly weapon and that he then be guilty of robbery in the first degree instead of the second degree. Did you understand that?"

The judge also stated: ". . . you have, as I see your signature, found the defendant guilty of attempted murder and you have found him guilty of robbery, so the finding of not guilty of assault with a deadly weapon would be inconsistent and I assumed you made a mistake by virtue of the fact that you didn't realize that you find him guilty of possession of the weapon by being a principal along with his co-defendant." Then the jury retired for further deliberation, and in approximately ten minutes returned with a verdict finding defendant guilty of first degree robbery while armed with a deadly weapon, guilty of attempted murder, and guilty of assault with a deadly weapon.

It is of course impermissible for a judge to indicate to a jury a particular verdict to be reached (*People* v. *Crowley*, 101 Cal.App.2d 71 [224 P.2d 748]; *People* v. *Walker*, 93 Cal.App.2d 818 [209 P.2d 834]). However, it is reasonably apparent from the face of the verdict which the jury first returned that they did not fully comprehend or absorb all of the court's instructions relating to principals and accomplices. Moreover, it is absolutely clear from the foreman's explanation that the jury unanimously found that Grigsby was Elizabeth Sherman's accomplice and that he aided and abetted her in the stabbing of Herman Williams; the jury simply did not understand that they could find Grigsby guilty of armed robbery and assault with a deadly weapon even though the knife was not in his possession when the crimes were committed. Thus, the court, in essence, merely told the jury to return to the jury room and to correct their verdict in order to conform the finding which they had already made with the law stated in the instructions. And, while the judge may have exceeded the bounds of propriety in the manner in which he questioned the jury and by the remarks which he made when he told the jury to return to the jury room, it is hardly likely that a different result, more favorable to appellant, would have been reached if the judge's remarks had been omitted (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243]). In short, instead of extensively questioning the jury, the trial judge should have carefully reread his instructions in the areas in which the jury's initial verdict indicated that they were confused. Had he done so, the jury would have undoubtedly returned the same verdict that they ultimately returned in this case. Consequently, it would not subserve the interests of justice to reverse the judgment and order a new trial.

Appellant Grigsby personally raises several contentions which he asks us to consider. However, none of the contentions has merit, and no further comment is necessary.

The judgments are affirmed.

Stone, J., concurred.