Filed 4/23/13  P. v. Juliar CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JEFFREY SCOTT JULIAR,<br><br>    Defendant and Appellant. | H037625<br>(Santa Clara County<br>Super. Ct. Nos. 211467, C1089650 &<br>CC806462) |

Defendant Jeffrey Scott Juliar was found guilty by a jury of theft and securities violations.  On appeal he contends that the trial court committed prejudicial error by instructing the jury on the doctrine of adoptive admissions.  We agree that the evidence cited by respondent to justify the instruction did not fall within the doctrine, because the statements defendant adopted were not offered for their truth but as evidence of *false* representations made by defendant to his victims.  However, we cannot say that the error was prejudicial, since the instruction appears to have been merely superfluous and unlikely to affect the jury's verdict in any way harmful to defendant.  Accordingly, we will affirm.

### BACKGROUND

An information filed February 5, 2009, charged defendant with two counts of grand theft in violation of Penal Code sections 484 through 487, subdivision (a).  An

indictment filed November 10, 2009, further charged one count of selling an unqualified security (Corp. Code, §§ 25110-25440, subd. (a)), two counts of making untrue statements and material omissions in connection with an offer to sell a security (Corp. Code, §§ 25401-25540, subd. (b)), and one count of using a device, scheme, and artifice to defraud another in the sale of a security (Corp. Code, § 25441). Prior to trial the prosecutor sought and obtained dismissal of the fraudulent devices charge (count four of the indictment) on the ground that it was going to be pursued by Alameda County authorities. The parties agreed to consolidate the remaining charges for trial and to incorporate them, for purposes of instructing the jury, in a single consolidated "information."

The gist of the prosecutor's case was that defendant obtained funds from two couples named Piekarski and Hernandez (the purchasers) by taking money from them in exchange for high-interest promissory notes payable by a company known as BluQuest, of which defendant was a principal. BluQuest purchased residential properties, apparently on speculation, and defendant assured the purchasers that their notes would be secured by deeds of trust on specific properties. In fact the deeds of trust on the Piekarski and Hernandez notes were never recorded, and there was not enough equity in the hypothecated properties to secure the notes. After BluQuest defaulted, both couples surreptitiously recorded conversations with defendant, transcripts of which were admitted in evidence, in which he could be understood to ratify false statements about the security of their investments.

The jury convicted defendant on all counts, and the court sentenced him to an aggregate term of two years' imprisonment.[1] This timely appeal followed.

---

[1] By the time of sentencing defendant had also pled guilty to a charge of failing to appear while on bail.

2

## I. Error

The sole issue on appeal is whether the trial court committed prejudicial error by giving an instruction, set forth in the margin here, concerning adoptive admissions.[2] That there was no occasion to give such an instruction seems clear. The adoptive admission doctrine is codified at Evidence Code section 1221, as follows: "Evidence of a statement offered against a party is not made *inadmissible by the hearsay rule* if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct *manifested his adoption or his belief in its truth*." (Italics added.) As the first italicized phrase indicates, the doctrine operates only as an exception to the rule excluding hearsay evidence. (See Evid. Code, § 1200.) So understood, it comes into play only when a party raises an otherwise meritorious hearsay objection. (See *People v. Letner* (2010) 50 Cal.4th 99, 157 [codefendant's statement to officer during traffic stop that he was driving defendant home "was not hearsay, and therefore whether or not it constituted an 'adoptive admission' under the statute is of no moment"]; see *id.* at p. 188, fn. omitted [no error in refusing pattern instruction on adoptive admissions where

---

[2] The challenged instruction, which varies only immaterially from CALCRIM No. 357, appears in the reporter's transcript as follows: "If you conclude that someone made a statement outside of court that accused the defendant of the crime or tended to connect the defendant with the commission of the crime and the defendant did not deny it, you must decide whether each of the following is true:

"Number one, the statement was made to the defendant or made in his presence; two, the defendant heard and understood the statement; three, the defendant would[,] under all the circumstances[,] naturally have denied the statement if he thought it was not true; and, four, the defendant could have denied it but did not.

"If you decide that all of these requirements have been met, you may conclude that the defendant admitted the statement was true. If you decide any of these requirements has not been met, you must not consider either the statement or the defendant's response for any purpose."

codefendant's statement "was not hearsay, and . . . was not offered to prove" that second defendant "believed and admitted [the] statement was true"; pattern instruction "would have been inappropriate and confusing"].)

Here the hearsay rule itself never came into play because defendant lodged no objection to the evidence cited by respondent in support of the instruction. That evidence consisted of conversations between defendant and his investor-victims, as transcribed from recordings made by the latter. Defendant not only failed to lodge a hearsay objection, but expressly declared—in the course of objecting to other documentary evidence—that he had "[n]o objection" to the transcripts "if corrected." Hearsay evidence, if not objected to, may be admitted and considered for any relevant purpose. (See Evid. Code, § 353; *People v. Rodriquez* (1969) 274 Cal.App.2d 770, 776 ["hearsay evidence is competent and relevant in the absence of a specific hearsay objection"].)

Further, a hearsay objection, if made, would have been unsound. The extrajudicial statements cited by respondent as adoptive admissions were not offered for the truth of the matters asserted. On the contrary, under the prosecution's theory these statements were *false*, and were relevant not to show not the true condition of the purchasers' investments but the nature of the misrepresentations defendant had made to induce those investments and forestall discovery. Respondent describes the first cited example of an adoptive admission as follows (italics added): "During the recorded discussion between Piekarski and appellant, Piekarski recited that the first mortgage on the Calistoga Drive property was $271,000 and that $240,000 was due on the note. *Appellant agreed this was correct.* [Record citation.] Piekarski stated that with his lien of $50,000 and a 90 percent loan-to-value the property must be worth at least $322,000 which would give him an asset of value to foreclose upon. [Record citation.] *Again, appellant agreed.* [Record citation.] When Piekarski represented that the total encumbrances against the property amounted to $290,000, appellant did not object or propose any other amount. [Record

4

citation.] In fact, the record clearly demonstrated *there was no equity at all in the Calistoga Drive property, in fact it was underwater, due to the numerous encumbrances placed on it by appellant.*" In short, Piekarski made two assertions, both *contrary* to fact, with which defendant *expressly agreed.* There was nothing "adoptive" about defendant's conduct; he explicitly assented to the stated propositions. Moreover no one contended that his assent tended to prove their truth; it was all but conceded—and was certainly the prosecution's position—that *they were false*.

In the second supposed instance of an adoptive admission, as recounted by respondent, "Ms. Hernandez asked appellant, 'You know what the basic question is: is there enough equity in the home?' Appellant responded, 'Plenty, we never, we, we never went over 90 % on this.' [Record citation.] *This clearly was not true.*" (Italics added.) Here defendant did not merely assent to an assertion but made an affirmative utterance of his own—which was, as respondent states, "not true." Again, there was no adoption of any statement by Ms. Hernandez, but rather a false answer to a question by her. In the third case, "Mr. Hernandez indicated that from the outset the parties understood that their deed of trust was in second position, '[*W*]*hen we first met . . . that we were gonna be second position on the house . . . .*' [Record citation; italics respondent's.] *Appellant agreed with Hernandez's representation, commenting, "Right."* [Record citation; italics added.] Again, the evidence showed unequivocally that there were a number of prior deeds of trust issued by appellant against the property. *The Hernandez lien was not in second place.*" (Italics added.) Here a factfinder might find a kind of admission, insofar as defendant could be understood to acknowledge making *earlier* representations to the purchasers that their deed would be in second place. But again any admission was an express, not an adoptive one.

Respondent appears to confuse the concept of adoptive admissions with the much broader one of an *implied* admission, i.e., "[a]n admission reasonably inferable from a

5

party's action or statement, or a party's failure to act or speak . . . [a]lso termed *tacit admission*." (Black's Law Dict. (9th ed. 2009), p. 54, col. 1.) Examples of implied admissions include the inference of guilty knowledge that may be drawn from a false alibi (e.g., *People v. Allison* (1966) 245 Cal.App.2d 568, 576) or false or contradictory explanations for incriminating facts (*People v. Ford* (1962) 200 Cal.App.2d 905, 920, 921), or other false (*People v. Sievers* (1967) 255 Cal.App.2d 34, 38) or anomalous statements (*People v. Peyton* (2009) 176 Cal.App.4th 642, 648, fn. 4), or omissions (*People v. Palmer* (1978) 80 Cal.App.3d 239, 249), or efforts to avoid apprehension (e.g., *People v. Garrison* (1989) 47 Cal.3d 746, 773). In at least some of these contexts, the term "admission" may be slightly inapt, since there is no implied *statement* attributed to the defendant, but only an incriminating *inference* drawn from his conduct. In the case of an "adoptive admission," however, the person against whom the evidence is offered has manifested a belief in someone else's *statement*, the truth of which it is therefore admitted to show.

Here one or more incriminating inferences might indeed have been drawn from defendant's responses to various statements and questions cited by respondent. Most obviously, in failing to contradict their false beliefs about the state of their investments he could be understood to ratify the earlier misrepresentations that engendered those beliefs. But nothing cited by respondent or found by us in this record qualifies as a potential adoptive admission.

### II. Prejudice

We see no concrete basis to suspect that the giving of an instruction on adoptive admissions had any effect on the outcome. The instruction applied by its terms only if the jury found four preliminary facts, including that defendant "would naturally have denied the statement if he thought it was not true." Here of course the prosecution theory was that defendant *knew* the statements were not true, and refrained from denying them

6

in the hope of continuing to deceive the victims. Even if jurors were confused about how the instruction might apply in such circumstances, it operated only to permit them to "conclude that the defendant admitted the statement *was true*." If they reached that conclusion, however, they would have been compelled to acquit defendant—or at least disregard the cited evidence in convicting him. Thus, while the instruction created a risk of perplexing the jurors, we fail to see how it might have confused them in a manner detrimental to defendant.

Defendant asserts that the instruction was especially dangerous "because the elements of the charged offenses themselves involved [his] statements and omissions." He notes that the charge of theft by false pretenses could be proven "by evidence that appellant made 'a representation recklessly without information that justifies a reasonable belief in its truth' and that appellant did not 'give information when [he had] an obligation to do so." (Citing CALCRIM No. 1804.) He also observes that to find him guilty under Corporations Code section 25401, the jury had to find that he "made an untrue statement of material fact, or omitted to state a material fact necessary in order to make the statement made . . . not misleading." The instruction on adoptive admissions, he asserts, "created confusion as to when appellant's silence, failure to deny a statement made in his presence, or failure to correct a misstatement made in his presence could be used to satisfy the elements of the charged crimes." We fail to see how. The instruction only comes into play when it appears that a defendant has manifested a belief in the *truth* of the adopted statement. Defendant points to no specific evidence that the instruction might have led the jury to misconstrue, or the evaluation of which it might have affected in any way. Instead he posits that the evidence was "closely balanced" in that, while he apparently made false or incomplete statements in connection with the sale of the promissory notes, the BluQuest business started with legitimate objectives and became caught up in "the sudden changes in the real estate market brought on by the recession of

7

2007-2008." He also cites "various negligent and sloppy practices in the running of the office" as factors. Again, we fail to see how the jury's consideration of any of these matters was likely to be affected by the extraneous instruction he challenges here. It is an appellant's burden " ' "not alone to show error, but to show injury from the error." ' " (*In re Marriage of Falcone* (2008) 164 Cal.App.4th 814, 822, quoting *Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 740.) Defendant has not made such a showing.

### DISPOSITION

The judgment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.