Filed 3/17/15  P. v. Anguiano CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060384 |
| v. | (Super.Ct.No. FVA1301049) |
| JOSE MARTINEZ ANGUIANO, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Colin J. Bilash, Judge.  Affirmed.

Trenton C. Packer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Charles C. Ragland and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

1

When an ex-employee demanded his final salary payment, defendant Jose Martinez Anguiano beat him with a wrench.

After a jury trial, defendant was found guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), with an enhancement for personally inflicting great bodily injury (Pen. Code, § 12022.7). Defendant was placed on probation for three years, on conditions including a 365-day jail term.

Defendant now contends:

1. The trial court erred by having the sole defense witness arrested in the presence of the jury.

2. The trial court erred by refusing to instruct on the lesser included offense of simple assault.

3. The prosecutor committed misconduct by misstating the evidence in closing argument.

We find no prejudicial error. Hence, we will affirm.

I

FACTUAL BACKGROUND

A.     *The Prosecution Case-in-Chief.*

Abraham Yebio  worked for defendant as a truck driver. They had a generally good relationship; however, defendant did not pay him on time. For that reason, on April 12, 2013, Yebio quit.

2

On April 26, 2013, sometime after 11:50 a.m., Yebio met defendant at a truck yard in Fontana. He was there to pick up his final paycheck and to give defendant the keys to his truck.

When Yebio arrived, defendant was accompanied by two men whom Yebio did not know. Defendant said he was going to pay Yebio $80 in cash and $120 in "Comcheks."[1] Comcheks are a kind of scrip that can be used at truck stops. Defendant asked for the truck keys. Yebio responded, "Where is the money?" Defendant said, "Give me some time; I need to go the truck stop and cash [the Comcheks]."

Defendant left; he returned 10 or 15 minutes later. He walked up to Yebio, then suddenly hit him with a wrench. One of the two men who were with defendant held Yebio's arms behind his back. The other man punched Yebio in the mouth. Yebio testified that defendant hit him with the wrench three or four times — in the left side of the head, on the forehead, on the neck, and possibly also in the back — before he lost consciousness. The other men hit him five or six times.

When Yebio came to, defendant and the other two men were gone. His car had been ransacked. He still had the keys to defendant's truck; however, he believed that defendant had a second set of keys. He called 911 and was taken to a hospital.

---

[1] Misspelled in the record as "comp checks."

Yebio had a concussion[2] and lost six teeth. Staples were used to close a gash on his forehead. After the attack, he suffered from dizziness, blurred vision, and numbness in his hands and legs. By the time of trial, he continued to experience dizziness, pain, insomnia, and breathing problems.

Yebio drew a responding officer's attention to a wrench on the ground. It was 18 to 20 inches long. The officer did not notice any blood on it. It was not tested for fingerprints "[b]ecause it was covered in dust . . . ."

When the police interviewed defendant, he admitted meeting Yebio at the truck yard to pay him some money that he owed him.

Yebio admitted that he had hired a lawyer to sue defendant.

B.      *The Defense Case*.

Felix Salinas used to work for defendant. He testified that, on the night of April 25-26, 2013, he slept in his truck at the truck yard. He was awake but still in the sleeper when he heard screaming and shouting.

---

**2**      After Yebio testified that he had a concussion, defense counsel objected based on lack of foundation. The objection was sustained, but defense counsel did not move to strike. Thus, we apply the principle — frequently taught in trial advocacy classes, but rarely encountered in practice — that once testimony has been given, even if there is an objection, and even if the objection is sustained, the jury can still consider it unless, in addition, a motion to strike is made and granted. (*People v. Letourneau* (1949) 34 Cal.2d 478, 489; *People v. Vetri* (1960) 178 Cal.App.2d 385, 394.) The jury was not instructed otherwise.

When he looked out, he saw "two guys . . . jump on [defendant's] driver" — i.e., Yebio. The first punch knocked Yebio out. Even after that, the men continued to hit him. One of them hit Yebio with a metal bar. Then the men left. According to Salinas, defendant was not at the truck yard at the time.

C.     *The Prosecution Rebuttal*.

Gerardo Ramirez lived as well as worked at the truck yard. He knew Salinas. He testified that he did not see Salinas on April 26, 2013. He admitted, however, that he was not at the truck yard 24 hours a day. He also admitted that he was not present during the fight.

II

ARRESTING SALINAS IN FRONT OF THE JURY

Defendant contends the trial court erred by having Salinas, the sole defense witness, arrested in the presence of the jury.

A.     *Additional Factual and Procedural Background*.

As indicated in part I, *ante*, the sole witness for the defense was Felix Salinas. When he finished testifying, the prosecutor asked that he be subject to recall.

This discussion ensued:

"THE COURT: Mr. Salinas, you're free to go. But just remain available if you are needed again.

"THE WITNESS: I don't know if I'm going to be able to come again.

"THE COURT: That is not an option, sir.

5

"THE WITNESS:  I got a job to do.

"[THE PROSECUTOR]:  Your Honor, this shouldn't be done in the presence of the jury.

"THE COURT:  Sir, we are not going to have this discussion; okay?

"THE WITNESS:  Okay.  You call my boss and tell him —

"THE COURT:  Sir —

"THE WITNESS:  Who is going to pay my bills?

"THE COURT:  He is remanded to the custody of the sheriff.

"THE BAILIFF:  Do you want to stand up for me, please, because you're in custody now.

"Hands behind your back.

"(The witness was removed from the courtroom at this time.)

"THE COURT:  Ladies and gentlemen, obviously, there's a little problem there.

"You keep in mind that the witness's statements, attitude, and conduct after he was requested to make himself available and his subsequent lack of cooperation on that issue was in no way a reflection on this case; okay?  And therefore, you are not to consider that for any purpose as to the guilt or innocence of the [d]efendant.  It's a separate issue not related.

"You evaluate his testimony as you see fit.  What happened after that is not part of that; okay?"

6

The trial court had the jury step outside. Defense counsel indicated that he was ready to rest. The prosecutor indicated that he would be calling a single rebuttal witness. After a lunch break, the jury returned and the rebuttal witness testified. Both sides rested. After an exhibits and instructions conference, the trial court scolded Salinas and finally excused him.

The next day, the prosecutor requested a further admonition to the jury, which would include the fact that Salinas had been released. Defense counsel noted that the trial court had already given an admonition. He objected to mentioning that Salinas had been released, but he agreed to an admonition that "you don't have to consider that incident that took place in the courtroom . . . ."

Thus, the trial court gave the jury a further admonition, saying Salinas had been released and the jury was to disregard "anything that happened after he finished testifying . . . ."

B.      *Analysis.*

Significantly, defense counsel never raised defendant's present contention below. When Salinas was taken into custody, he did not object. When the trial court admonished the jury, he did not argue that the admonition was inadequate. And he never moved for a mistrial.

"Ordinarily, an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court. [Citation.] The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if

7

timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citations.] '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' [Citation.]" (*People v. French* (2008) 43 Cal.4th 36, 46.)

Accordingly, an analogous claim — that the trial court erred by allowing the defendant or a witness to appear in shackles in front of the jury — is forfeited by failure to raise it below. (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 583.) Likewise, a claim of judicial misconduct is forfeited if not raised below. (*People v. Maciel* (2013) 57 Cal.4th 482, 533.)

Defendant argues that an objection was unnecessary (or futile) because the prosecutor had already objected by saying, "Your Honor, this shouldn't be done in the presence of the jury." That, however, was an objection to the trial court's discussion with Salinas; thereafter, the trial court went beyond simply having a discussion with him by having him arrested.[3] It is not at all clear that an objection to this escalation of the situation (or a motion for a mistrial) would have been futile.

---

[3] The People argue that Salinas was not "arrested"; he was merely "temporarily remanded . . . into custody." Po-tay-to, po-tah-to. "An arrest is taking a person into custody . . . ." (Pen. Code, § 834.) "An arrest is made by an actual restraint of the person, or by submission to the custody of an officer." (Pen. Code, § 835.) Salinas was arrested.

Defendant also argues that an admonition would have been ineffective. In the analogous situation of the shackling of a witness, however, we may presume that the jury is able to follow an admonition. (*People v. Ceniceros* (1994) 26 Cal.App.4th 266, 281-282.) Also, defendant could have moved for a mistrial. A mistrial is the appropriate remedy for any prejudice that is "'"' . . . incurable by admonition or instruction.'"' [Citation.]" (*People v. Montes* (2014) 58 Cal.4th 809, 888.) Failure to move for a mistrial, when appropriate, can constitute a forfeiture. (*People v. Carrasco* (2014) 59 Cal.4th 924, 965 [spectator misconduct]; *People v. Russell* (2010) 50 Cal.4th 1228, 1250 [juror misconduct]; *People v. Jennings* (1991) 53 Cal.3d 334, 383 [judge's ex parte communication with jury].) Defendant does not claim his trial counsel rendered ineffective assistance by failing to object.

Finally, defendant argues that his trial counsel did raise the issue, supposedly by requesting an admonition. Actually, the trial court gave the first admonition sua sponte; the prosecutor requested the second admonition. Defense counsel simply indicated that he did not object to the second admonition, provided it was limited. In any event, whether he requested the admonition or acquiesced in the prosecution's request, his failure to object to the admonition as given forfeited any claim that it was inadequate to cure the harm.

While we decline to reach the merits, we do believe that the court could have handled this situation differently. It would seem that, instead of having Salinas arrested in the presence of the jury, it could have just ordered him to stop talking, then asked the

9

jury to step outside. Leaving aside whether this was legally required, it would certainly have been wise. However, the trial court did not have the benefit of hindsight, as we do.

We conclude that any error in having Salinas arrested has not been preserved.

III

REFUSAL TO INSTRUCT ON

LESSER INCLUDED OFFENSE OF SIMPLE ASSAULT

Defendant contends the trial court erred by refusing to instruct on the lesser included offense of simple assault.

A.    *Additional Factual and Procedural Background.*

Defense counsel asked the trial court to give an instruction on simple assault as a lesser included offense. The trial court refused, explaining: "[I]f believed that [defendant] assaulted [the victim] at all, there is no evidence that he assaulted him other than with a wrench. So he either assaulted him with a wrench or didn't assault him. That's the only testimony."

B.    *Analysis.*

Simple assault is a lesser included offense of assault with a deadly weapon. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747; *People v. Grigsby* (1969) 275 Cal.App.2d 767, 775.)

"A trial court must instruct on all lesser included offenses supported by substantial evidence. [Citations.] The duty applies whenever there is evidence in the record from which a reasonable jury could conclude the defendant is guilty of the lesser, but not the

10

greater, offense. [Citations.]" (*People v. Duff* (2014) 58 Cal.4th 527, 561.) "Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 240.)

"'On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense.' [Citation.]" (*People v. Banks* (2014) 59 Cal.4th 1113, 1160.)

"As used in [Penal Code] section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon that is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.'" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.) Defendant does not dispute that, if he hit the victim with a wrench, as the victim testified, the wrench would be a deadly weapon. However, "deadly weapon" does not include bare hands or feet. (*Id*. at pp. 1026-1027.) Defendant argues that the jury could have found that he hit the victim only with his hands, not with a wrench.

Yebio was adamant that defendant hit him with a wrench. He admitted that defendant approached him "from [his] left side, . . . from behind"; he added, however, that he could "see [defendant] with [his] eyes" and specifically that he could see the wrench in defendant's hands. He told the responding officer that he had been hit with a wrench. A wrench was lying nearby; he pointed it out to the responding officer. Even

11

defense witness Salinas admitted that Yebio was hit with a metal bar — "a big piece of metal."

Defendant claims there is room for doubt because, according to the "victim statement" section of the police report, Yebio said he had been hit with a "solid object." However, the responding officer explained: "[D]uring my initial interview with him, . . . he explained to me that he was attacked; he got hit by something. And during the rest of the interview, he explained to me that he got hit by the wrench." The same police report also stated in a different section that defendant hit the victim with a wrench. In any event, if defendant inflicted the victim's injuries with *any* object (as opposed to a hand or a foot), that object was a deadly weapon.

Defendant also notes that there was no blood on the wrench. Actually, the responding officer testified that he did not *notice* any blood; the wrench was never scientifically tested. There was no expert (or other) testimony that hitting someone with a wrench would necessarily leave visible blood. "' . . . "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.]"' [Citations.]" (*People v. Wyatt* (2012) 55 Cal.4th 694, 698.) Thus, this evidence did not call for an instruction on simple assault.

Last, defendant argues that the jury could have found that the victim was struck by the other two men's fists. However, evidence that someone else hit the victim did not

12

tend to show that defendant was guilty of a lesser included offense; it tended to show that he was not guilty at all.**4**

Separately and alternatively, the asserted error was harmless. "[A]n erroneous failure to instruct the jury on a lesser included offense is subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818[5] . . . [E]vidence sufficient to warrant an instruction on a lesser included offense does not necessarily amount to evidence sufficient to create a reasonable probability of a different outcome had the instruction been given. [Citations.]" (*People v. Banks*, *supra*, 59 Cal.4th at p. 1161.) Here, given the strength of the evidence that the victim was hit with a wrench (or a metal bar or other solid object), we see no reasonable probability that a jury would have found defendant guilty of simple assault.

---

**4** In principle, defendant might still have been guilty as a conspirator or an aider and abettor. The jury, however was not instructed on conspiracy or aiding and abetting principles.

**5** In the caption of his argument, defendant asserts that the failure to instruct on the lesser included offense "violated [his] constitutional rights." (Capitalization altered.) Nevertheless, he does not cite any authority for the proposition that there is a federal constitutional right to an instruction on a lesser included offense. Quite the contrary, he concedes that the *Watson* standard applies.

If only out of an excess of caution, we note that "'[t]here is no federal constitutional right of a defendant to compel the giving of lesser-related-offense instructions. [Citation.]' [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1344.)

IV

PROSECUTORIAL MISCONDUCT

BY MISSTATING FACTS IN CLOSING ARGUMENT

Defendant contends the prosecutor committed misconduct by misstating the evidence in closing argument.

A.      *Additional Factual and Procedural Background.*

1.      *Testimony of Yebio and Salinas.*

Yebio told the police that he worked for "D and A Trucking" and that defendant was "his boss[]."

Salinas testified that defendant was "the person I used to work for." When asked, "Have you ever driven a truck for anybody related to [defendant]?," he said he had driven a truck for defendant's sister.

On cross-examination, Salinas was asked:

"Q  And you also worked for Angelica Ayala; correct?

"A  I didn't used to work for them; I just think I deliver a couple of loads for them once and I took one of her trucks to the mechanic, and that's all."

He added that he had driven for Ayala three or four times over the course of two or three days. The name of Ayala's company was D. A. Trucking. He then testified:

"Q  . . . [¶]  And when you were working as a trucker for D. A. Trucking, or driver, did you ever have contact with [defendant]?

"A  No."

14

Finally, Salinas made it clear that Ayala was defendant's sister.

### 2. *Jury instructions*.

The trial court gave the standard jury instruction that: "Nothing the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence." (CALCRIM No. 222.)

It also gave the following ad libbed instruction:

"Please keep in mind a couple of things: Number one, what the attorneys say is not evidence. . . . [A]t the beginning was what they thought the evidence would show. Now it's their arguments of what they believe the evidence has shown.

"None of the attorneys would intentionally mislead you but everybody forgets things or makes mistakes. As was told you in the instructions, should they say something that you decide was not said or find differently, and does not follow what was given in the instructions, go by the instructions, and you decide the facts to be; nothing else."

### 3. *The prosecutor's statement in closing*.

In closing argument, the prosecutor stated: "[Salinas] knows Angelica, the [d]efendant's sister, who owns D. A. Trucking Company. And D. A. Trucking Company ultimately is run and operated by the [d]efendant. That is a huge bias . . . ."

Defense counsel objected, "That misstates the testimony," but the trial court overruled the objection. It added: "As I mentioned the jury can sort out, with your guidance."

B.     *Analysis*.

"'"'When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated.'" [Citations.] '"Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury." [Citation.]' [Citation.] Misconduct that does not constitute a federal constitutional violation warrants reversal only if it is reasonably probable the trial outcome was affected. [Citations.]" (*People v. Shazier* (2014) 60 Cal.4th 109, 127.)

"'[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.' [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

"For a prosecutor to misstate the evidence is prosecutorial misconduct. [Citations.]" (*People v. Davis* (2005) 36 Cal.4th 510, 550.) However, "'"[p]rosecutors have wide latitude to discuss and draw inferences from the evidence at trial. [Citation.] Whether the inferences the prosecutor draws are reasonable is for the jury to decide.'" [Citation.]" (*People v. Abel* (2012) 53 Cal.4th 891, 926.)

Yebio testified that he was "employed by" defendant. According to his statement to the police, he worked for D. A. Trucking and defendant was his boss. From this, the

16

prosecutor could properly infer — and thus could properly argue — that "D. A. Trucking Company ultimately is run and operated by the [d]efendant."

Separately and alternatively, the prosecutor's statement plainly was not prejudicial. Salinas admitted that he had worked for defendant. Thus, the prosecutor's basic point — that there was evidence that Salinas might be biased — was accurate. Indeed, Salinas's admission that he had worked "for" defendant was even stronger evidence of bias than the fact that he had worked for defendant's sister or defendant's company.

In addition, the trial court had already warned the jurors that the attorneys might make unintentional mistakes in closing argument. It had also instructed them that the attorneys' remarks were not evidence. While it overruled defense counsel's objection, it reminded the jurors that it was up to them to "sort [it] out." "We assume the jury followed these instructions, and that any prejudice . . . was thus avoided. [Citation.]" (*People v. Chatman* (2006) 38 Cal.4th 344, 405.)

Finally, we note that the prosecutor made the challenged statement in his initial closing argument. Defense counsel got to go next and to respond to anything the prosecutor had said. If the statement was such a whopper, one would have expected defense counsel to point it out and turn it to his advantage. Certainly he had the opportunity to do so; but he did not.

We therefore conclude that defendant has not shown any reversible prosecutorial misconduct.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

18